FILED
2017 Mar-14  PM 03:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit A

DOCUMENT 1

*CV 17-11*

| State of Alabama<br>Unified Judicial System | **COVER SHEET**<br>**CIRCUIT COURT – CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number<br><br>C V ☐☐☐☐ ☐☐☐☐ - ☐☐ |
|---|---|---|
| Form ARCiv-93   Rev.5/99 | | Date of Filing:  ☐☐ ☐☐ ☐☐☐☐   Judge Code: ☐☐☐☐<br>Month  Day  Year |

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF _Jefferson County_, ALABAMA
(Name of County)

_Larry Montgomery Jr_ v. _WELLS FARGO BANK, NA_
First Plaintiff   Defendant First Defendant

First Plaintiff: ☐ Business ☒ Individual ☐ Government ☐ Other
First Defendant: ☒ Business ☐ Government ☐ Individual ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☒ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
☒ TOPE - Personal Property
☒ TORE - Real Property

**OTHER CIVIL FILINGS**
☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☐ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP - Workers' Compensation
☐ CVXX - Miscellaneous Circuit Civil Case

*FILED IN OFFICE*
*FEB 14 2017*
*CIRCUIT CLERK*
*BESSEMER DIVISION*
*JEFFERSON COUNTY, ALABAMA*

**ORIGIN** (check one):  F ☒ INITIAL FILING   A ☐ APPEAL FROM DISTRICT COURT   O ☐ OTHER: _____
R ☐ REMANDED   T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☒ YES ☐ NO   Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:** ☒ MONETARY AWARD REQUESTED   ☐ NO MONETARY AWARD REQUESTED

ATTORNEY CODE: ☐☐☐☐☐☐   Date _2/14/17_   Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:** ☐ YES ☐ NO ☒ UNDECIDED

| State of Alabama<br>Unified Judicial System<br><br>Form C-34     Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | **Case Number**<br>CV 17 - 11 |
|---|---|---|

IN THE _Circuit_ COURT OF _Jefferson_ COUNTY

Plaintiff _Larry Montgomery Jr_     v.   Defendant _WELLS FARGO BANK NA_
_Shineka A. Montgomery_                                _SHAPIRO AND INGLE, LLP_

NOTICE TO _WELLS FARGO BANK, NA_                               _CFO_
_420 Montgomery ST. San Francisco, CA 94104 ATTN John Shrewsbury_

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE
ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF
YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH
THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR
YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _Larry Montgomery Jr_ WHOSE
ADDRESS IS _6370 Letson Farms Rd_
_Bessemer, Alabama 035027_

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN _30_ DAYS AFTER THIS SUMMONS AND
COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR
THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

---

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED** by the Alabama Rules of Civil Procedure:

[ ] You are hereby commanded to serve this summons and a copy of the complaint in this action upon the
defendant.

[X] Service by certified mail of this summons is initiated upon the written request of
pursuant to the Alabama Rules of Civil Procedure.

_FILED IN OFFICE_
_FEB 14 2017_
_CIRCUIT CLERK_
_BESSEMER DIVISION_
_JEFFERSON COUNTY, ALABAMA_

Date _____     By: _____

Clerk/Register

---

[X] Certified Mail is hereby requested.     _____
                                            Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.
                                                                        (Date)

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
              (Date)

| Date<br>_____ | Server's Signature<br>_____ |
| Type of Process Server<br>_____ | Address of Server<br>_____ |
| | Phone Number of Server<br>_____ |

| State of Alabama<br>Unified Judicial System<br><br>Form C-34      Rev 6/88 | **SUMMONS**<br>**-CIVIL-** | **Case Number**<br>CV 17-11 |
|---|---|---|

IN THE _Circuit_ COURT OF _Jefferson_ COUNTY

Plaintiff _Larry Montgomery Jr_ v. Defendant _WELLS FARGO BANK, NA_
_Shanika A Montgomery_ _SHAPIRO AND INGLE, LLP_

NOTICE TO _SHAPIRO AND INGLE, LLP_
_10130 PERIMETER PARKWAY Suite 400, Charlotte, NC 28216_

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY _Larry Montgomery Jr_ WHOSE ADDRESS IS _6370 Letson Farms Rd_
_Bessemer, Alabama [35022]_

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN __20__ DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

---

**TO ANY SHERIFF OR ANY PERSON AUTHORIZED** by the Alabama Rules of Civil Procedure:

[ ] You are hereby commanded to serve this summons and a copy of the complaint in this case upon the defendant.

[X] Service by certified mail of this summons is initiated upon the written request of _____ pursuant to the Alabama Rules of Civil Procedure.

Date _____                                          By: _____

                                    Clerk/Register

*FILED IN OFFICE*
*FEB 1 4 2017*
*CIRCUIT CLERK*
*BESSEMER DIVISION*
*JEFFERSON COUNTY, ALABAMA*

[X] Certified Mail is hereby requested.        _____
                                    Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:

[ ] Return receipt of certified mail received in this office on _____.

[ ] I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County,
Alabama on _____.
          (Date)

_____          _____
Date                             Server's Signature

_____          _____
Type of Process Server           Address of Server

                                 _____

                                 _____
                                 Phone Number of Server



Special Restricted Appearance of
Larry Montgomery Jr and Shameka A. Montgomery et ux,
sui juris, 3rd Party Interveners
6370 Letson Farms Road
Bessemer, Alabama
Phone No. 205-238-0375

# IN THE CIRCUIT COURT
## OF THE TENTH JUDICIAL CIRCUIT
### IN AND FOR JEFFERSON COUNTY, AL  35203

| | |
|---|---|
| **LARRY MONTGOMERY JR AND SHAMEKA A. MONTGOMERY, ET UX, SUI JURIS,**<br><br>Plaintiffs,<br><br>VS.<br><br>**WELLS FARGO BANK, NA. AMERICAS AS TRUSTEE, AND SHAPIRO AND INGLE, LLP**<br>Defendants,<br><br>AND<br><br>Larry Montgomery Jr and Shameka A. Montgomery, et ux, sui juris,<br><br>3rd Party Interveners, | **COMMON LAW ACTION**<br><br>CV 17-11<br><br>FILED IN OFFICE<br><br>**COMPLAINT**   FEB 1 4 2017<br>CIRCUIT CLERK<br>BESSEMER DIVISION<br>JEFFERSON COUNTY, ALABAMA<br><br>**(TRIAL BY JURY DEMANDED)**<br><br>CASE NO: _____ |

## COMPLAINT

1. **Parties in this Complaint**
   a. LARRY MONTGOMERY JR
      6370 LETSON FARMS RD
      BESSEMER, AL 35022

      SHAMEKA A. MONTGOMERY
      6370 LETSON FARMS RD
      BESSEMER, AL 35022

   b. **Defendant(s)**
      WELLS FARGO BANK, NA
      420 MONTGOMERY STREET
      SAN FRANCISCO, CA 94104

1

SHAPIRO AND INGLE, LLP
10130 PERIMETER PARKWAY
SUITE 400
CHARLOTTE, NC 28216

c.     **3rd Party Interveners**
Larry Montgomery Jr
6370 Letson Farms Road
Bessemer, Alabama [35022]

Larry Montgomery Jr FOR
Shameka Angela Montgomery
Larry Montgomery Jr
6370 Letson Farms Road
Bessemer, Alabama [35022]

2.     **NOW,** comes the Petitioners, Larry Montgomery Jr, et ux and Shameka A.
Montgomery, sui juris, and real parties-in-interest, by special restrictive appearance and
hereby petition this Court to permit their complaint of Conspiracy to Defraud Plantiffs
LARRY MONTGOMERY JR and SHAMEKA A. MONTGOMERY of their property by
way of foreclosure sale. **(Trial By Jury Demanded)**

3.     **Jurisdiction**
This case belongs in federal court under federal question jurisdiction
because it is about federal law(s) or right(s).

4.     **Venue**
This Court can hear case because a substantial part of the events concerning
this matter occurred in Jefferson County (Bessemer).

5.     **Statement of Facts and Claims**
a.     In 1933, President Roosevelt signed Executive Order 6102 into effect and
House Joint Resolution 192 was passed in Congress which removed the U.S.
Dollar from gold backing, and promised that the Federal Government would
discharge our legitimate obligations dollar for dollar.
b.     This was made Public Law with Public Law 73-10 and Statues of Large
"Chap.48, 48, Stat. 112."
c.     U.S. Constitution Article 1 Section 10 states that no state shall impair the
obligations of contracts.
d.     Larry Montgomery Jr. lawfully discharge the amount due on the alleged
account by issuing a Negotiable Debt Instrument to WELLS FARGO BANK, NA
in a private administrative process contract dated 10/16/2015.

e.      WELLS FARGO BANK, NA accepted the instrument for discharge, setoff, and closure of the account on or about November 22, 2015 according to the terms of the NOTICE OF FAULT IN DISHONOR (Opportunity To Cure) dated 11/12/2015.

f.      WELLS FARGO BANK, NA then consented to judgment in the matter in a Private Administrative process according to the NOTICE OF DEFAULT IN DISHONOR CONSENT TO JUDGMENT dated February 16, 2016.

g.      WELLS FARGO BANK, NA has dishonored the private agreement (contract) and judgment and has continued to pursue additional payment in violation of U.C.C. 3 § 3-603.

h.      WELLS FARGO BANK, NA has not paid the agreed upon fees for their actions pursuant to the NOTICE OF DEFAULT IN DISHONOR CONSENT TO JUDGMENT dated February 16, 2016.

i.      WELLS FARGO BANK, NA continues to damage LARRY MONTGOMERY JR and SHAMEKA A. MONTGOMERY's credit despite numerous requests to cease.

j.      Then after further investigation, Larry Montgomery then discovered that both Larry Montgomery Jr. and Shameka A. Montgomery were not disclosed all the details of the Mortgage (Security Instrument) rendering both the Mortgage (Security Agreement) and Promissory Note ab initio (void from the beginning), a non-enforceable legal contract.

k.      Larry Montgomery Jr and Shameka A. Montgomery then rescinded their signatures from the Promissory Note and Security Agreement with a Rescission of Mortgage dated 3/21/2016.

l.      Larry Montgomery Jr also found that the Promissory Note that he and his wife, Shameka A. Montgomery, signed has been securitized which makes the fraudulent Promissory Note a Security now and no longer a Note and separated from the Mortgage (Security Instrument). once separated the Mortgage (Security Instrument) is un-enforceable.

m.      WELLS FARGO BANK, NA continues to conspire to DEFRAUD and steal our real property by engaging SHAPIRO AND INGLE, LLP to sell our property in a foreclosure sale scheduled for March 2, 2017.

n.      WELLS FARGO BANK, NA through SHAPIRO AND INGLE, LLP have begun foreclosure action against Larry Montgomery Jr. and Shameka A. Montgomery's real property without standing or providing any evidence of standing to perform such action.

o.      Neither WELLS FARGO BANK, NA nor SHAPIRO AND INGLE are the Holder-In-Due course and neither of them have the right or standing to foreclose on our property.

p.      Under U.C.C. 3 § 3-301, if neither WELLS FARGO BANK, NA nor SHAPIRO AND INGLE, LLP are Holders-In-Due course then neither have standing or right or the ORIGINAL Promissory Note to foreclose on our property.

q.      Both WELLS FARGO BANK, NA and SHAPIRO AND INGLE, LLP refuse to provide proper debt validation and/or verification (according to 15 U.S.C., § 1601, 15 U.S.C. § 1692(e), 15 U.S.C. § 1692(g)(4), and 15 U.S.C. § 1692(g)(8)), as requested by Larry Montgomery Jr. on numerous occasions (January 11, 2017, January 25, 2017, 2/8/2017 most recently).

r.      Under the Truth in Lending Act pursuant to 15 USC §§ 1601-1667j, Larry Montgomery Jr. and Shameka A. Montgomery have a right to inspect a true certified copy of the original documents they claim to hold

s.      Pursuant of U.C.C. - ARTICLE 3 - §3-501 (b) 2 (1), both Larry Montgomery Jr. and Shameka A. Montgomery have the right to inspect the note and both WELLS FARGO BANK, NA and SHAPIRO AND INGLE, LLP dishonor us.

t.      I believe that unless the Court intervenes in this matter we will be bullied into losing our home.

**6.     Demand for Relief**

We request a stay of the scheduled foreclosure sale date until this matter is resolved.

We demand to be compensated for the emotional distress, and anguish, impunity damages, we would like the Court to fine them and charge the 5 times what they are trying to charge us, we would like the Court to order that WELLS FARGO BANK, NA honor the terms of the private agreement they DEFAULTED on, and we would like our home free and clear of all liens and a clear title.

**7.     Demand for Trial by Jury**

Plantiff demands a Trial by Jury on all issues

4

# THE

# STATUTES AT LARGE

OF THE

# UNITED STATES OF AMERICA

FROM

## MARCH 1933 to JUNE 1934

CONCURRENT RESOLUTIONS
RECENT TREATIES AND CONVENTIONS, EXECUTIVE PROCLAMATIONS
AND AGREEMENTS, TWENTY-FIRST AMENDMENT
TO THE CONSTITUTION

EDITED, PRINTED, AND PUBLISHED BY AUTHORITY OF CONGRESS
UNDER THE DIRECTION OF THE SECRETARY OF STATE

# VOL. XLVIII

IN TWO PARTS

PART 1—Public Acts and Resolutions.

PART 2—Private Acts and Resolutions, Concurrent Resolutions
Treaties and Conventions, Executive Proclamations
and Agreements, Twenty-first Amendment to the
Constitution.

## PART 1

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1934

For sale by the Superintendent of Documents, Washington, D. C. - - - - - - - - - - - - Price $4.00 (Buckram)

[CHAPTER 46.]

June 3, 1933.
[H. R. 4404.]
[Public, No. 29.]

## AN ACT

Authorizing a per capita payment of $100 to the members of the Menominee Tribe of Indians of Wisconsin from funds on deposit to their credit in the Treasury of the United States.

Menominee Indians of Wisconsin.
Per capita payments to, from tribal funds.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Secretary of the Interior be, and he is hereby, authorized to withdraw from the fund in the Treasury of the United States on deposit to the credit of the Menominee Indians in the State of Wisconsin a sufficient sum to make therefrom a per capita payment or distribution of $100, in three installments, $50 immediately upon passage of this Act, $25 on or about October 15, 1933, and $25 on or about January 15, 1934, to each of the living members on the tribal roll of the Menominee Tribe of Indians of the State of Wisconsin, under such rules and regulations as the said Secretary may prescribe.

Approved, June 3, 1933.

[CHAPTER 47.]

June 5, 1933.
[S.J.Res. 48.]
[Pub. Res., No. 9.]

## JOINT RESOLUTION

Authorizing the Secretary of War to receive for instruction at the United States Military Academy at West Point, Posheng Yen, a citizen of China.

Posheng Yen, a citizen of China.
Admitted to Military Academy.
Proviso.
No Federal expense.
Conditions.

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Secretary of War be, and he is hereby, authorized to permit Posheng Yen to receive instruction at the United States Military Academy at West Point for the course beginning not later than July 1, 1934: *Provided,* That no expense shall be caused to the United States thereby, and that Posheng Yen shall agree to comply with all regulations for the police and discipline of the Academy, to be studious, and to give his utmost efforts to accomplish the courses in the various departments of instruction, and that said Posheng Yen shall not be admitted to the Academy until he shall have passed the mental and physical examinations prescribed for candidates from the United States, and that he shall be immediately withdrawn if deficient in studies or in conduct and so recommended by the Academic Board: *Provided further,* That in the case of said Posheng Yen the provisions of sections 1320 and 1321 of the Revised Statutes shall be suspended: *Provided further,* That S.J.Res. 179, approved March 3, 1933, be, and the same is hereby, repealed.

Oath and service, waived.
R.S., secs. 1320, 1321, p. 227.
Existing law repealed.
Vol. 47, p. 1546.

Approved, June 5, 1933.

[CHAPTER 48.]

June 5, 1933.
[H.J.Res. 192.]
[Pub. Res., No. 10.]

## JOINT RESOLUTION

To assure uniform value to the coins and currencies of the United States.

Uniform value of coins and currencies.
Preamble.

Whereas the holding of or dealing in gold affect the public interest, and are therefore subject to proper regulation and restriction; and Whereas the existing emergency has disclosed that provisions of obligations which purport to give the obligee a right to require payment in gold or a particular kind of coin or currency of the United States, or in an amount in money of the United States measured thereby, obstruct the power of the Congress to regulate the value of the money of the United States, and are inconsistent with the declared policy of the Congress to maintain at all times the equal power of every dollar, coined or issued by the United States, in the markets and in the payment of debts. Now, therefore, be it

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That (a) every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. **Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts.** Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States, is hereby repealed, but the repeal of any such provision shall not invalidate any other provision or authority contained in such law.

(b) As used in this resolution, the term "obligation" means an obligation (including every obligation of and to the United States, excepting currency) payable in money of the United States; and the term "coin or currency" means coin or currency of the United States, including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations.

SEC. 2. The last sentence of paragraph (1) of subsection (b) of section 43 of the Act entitled "An Act to relieve the existing national economic emergency by increasing agricultural purchasing power, to raise revenue for extraordinary expenses incurred by reason of such emergency, to provide emergency relief with respect to agricultural indebtedness, to provide for the orderly liquidation of joint-stock land banks, and for other purposes", approved May 12, 1933, is amended to read as follows:

"All coins and currencies of the United States (including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations) heretofore or hereafter coined or issued, shall be legal tender for all debts, public and private, public charges, taxes, duties, and dues, except that gold coins, when below the standard weight and limit of tolerance provided by law for the single piece, shall be legal tender only at valuation in proportion to their actual weight."

Approved, June 5, 1933, 4.40 p.m.

*Marginal notes:*
- Clauses in obligations requiring gold, etc., payments declared contrary to public policy.
- No future obligation to be so expressed.
- Payments to be made in legal tender.
- Conflicting provisions repealed. U.S.C., p. 1903. Other provisions not invalidated.
- Term "obligation" defined.
- "Coin or currency."
- National Economic Emergency Act, amended. *Ante,* p. 52.
- Coins and currencies as legal tender.
- Abrased gold coins, according to weight.

[CHAPTER 49.]

## AN ACT

To provide for the establishment of a national employment system and for cooperation with the States in the promotion of such system, and for other purposes.

June 6, 1933.
[S. 510.]
[Public, No. 30.]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That (a) in order to promote the establishment and maintenance of a national system of public employment offices there is hereby created in the Department of Labor a bureau to be known as the United States Employment Service, at the head of which shall be a director. The director shall be appointed by the President, by and with the advice and consent of the Senate, and shall receive a salary at the rate of $8,500 per annum.

(b) Upon the expiration of three months after the enactment of this Act the employment service now existing in the Department of Labor shall be abolished; and all records, files, and property (including office equipment) of the existing employment service

*Marginal notes:*
- National cooperative employment service.
- United States Employment Service created in Department of Labor.
- Appointment, etc., of Director.
- Existing service to be abolished; personnel and property transferred.

Certified Mail # 7015 1520 0001 6427 4665
Certified Mail # 7015 1520 0001 6427 4658

**THIS IS A PRIVATE COMMUNICATION BETWEEN THE PARTIES**
NOTICE TO AGENT IS NOTICE TO PRINCIPAL --- NOTICE TO PRINCIPAL IS NOTICE TO AGENT

# NOTICE OF DEFAULT IN DISHONOR
# CONSENT TO JUDGMENT

February 16, 2016

Principal:
  ™Larry: Montgomery Jr©
  6370 Letson Farms Road
  Non Domestic
  BESSEMER [35022]
  ALABAMA Republic
  Continental America

Respondent(s):
  TIMOTHY SLOAN,
  CHIEF FINANCIAL OFFICER
  c/o WELLS FARGO BANK, N.A.
  420 MONTGOMERY STREET
  SAN FRANCISCO, CA 94104

  CC: KEITH DONZELL,
  CHIEF FINANCIAL OFFICER
  c/o GINNIE MAE MORTGAGE
  550 12ᵗʰ STREET, SW, THIRD FLOOR
  WASHINGTON, DC 20024

Re:    ACCOUNT NO. 0207045469; LARRY MONTGOMERY JR.

**STATEMENT OF FACTS:**

1. On October 16, 2015, Larry Montgomery Jr, hereinafter "Trustor", made presentment of an ACCEPTANCE OF THE ENCLOSED PRESENTMENT FOR VALUE SETTLEMENT AND CLOSURE, and Certified PROMISORY NOTE, hereinafter "Tender", for the setoff, settlement, and closure of Account No. 0207045469, hereinafter "Account", sent via USPS Certified Mail No. 7014 2870 0000 1488 4426.

2. On October 20, 2015, United States Postal Service, hereinafter "Carrier", delivered the Tender to the Tender Agent.

3. On October 28, 2015, Timothy Sloan, hereinafter "Tender Agent", dishonored the Tender issued by the Principal, as evidenced by the NOTICE OF FAULT IN DISHONOR (Opportunity to Cure) dated November 12, 2015", sent via USPS Certified Mail No. 7014 2870 0000 1488 8127, a record of which is attached hereto as Attachment "A"

4.  On November 23, 2015 the Tender Agent accepted the Tender for the settlement of the Account, as evidenced by insufficient response to the NOTICE OF FAULT IN DISHONOR (Opportunity to Cure) dated November 12, 2015", sent via USPS Certified Mail No. 7014 2870 0000 1488 8127, (received by Respondent November 16, 2015)

5.  Respondents' failure to sufficiently respond or timely honor the Presentment, by the terms of the Presentment, constitutes Respondents' acceptance and approval of the NOTICE OF FAULT IN DISHONOR (Opportunity to Cure) and all of the terms and conditions contained therein.

6.  CERTIFICATE OF NON-RESPONSE presentment dated January 26, 2016, received by Respondent January 29, 2016", sent via USPS Certified Mail No. 7015 0640 0002 8018 0044, a record of which is attached hereto as Attachment "A"

7.  As of February 16, 2016 the Principal has not received sufficient response to the Presentment, thereby placing the Respondents at fault, as evidenced by the NOTICE OF FAULT IN DISHONOR (Opportunity to Cure) dated November 12, 2015, and the CERTIFICATE OF NON-RESPONSE/NON-PERFORMANCE dated January 26, 2015 (received by respondent January 29, 2016), a record of which is attached hereto as Attachment "A".

8.  Respondents' failure to perform by the terms of the Fault Notice constitutes Respondents' acceptance, agreement, and approval of the granting and conveying of a Specific Power of Attorney to the Principal to perform the duties of the Respondents stipulated therein.

9.  Respondents' failure to **sufficiently respond** or timely honor the Fault Notice, by the terms of the Fault Notice, constitutes Respondents' acceptance, agreement, and approval of the NOTICE OF FAULT IN DISHONOR (Opportunity to Cure) incorporated with the Presentment.

10. Respondents' acceptance, agreement, and approval of the NOTICE OF FAULT IN DISHONOR (Opportunity to Cure) constitutes Respondents' agreement that Claimant's tender was sufficient for discharge, settlement, and set off of any and all alleged debts, obligations, duties and liabilities of or relating to the alleged Loan/Account: 0207045469

11. Respondents' acceptance, agreement, and approval of the NOTICE OF FAULT IN DISHONOR (Opportunity to Cure) constitutes Respondents' agreement to the stipulated aggregate amount of unpaid obligations being Zero ($0.00) and 00/100 dollars.

12. Respondents' acceptance, agreement, and approval of the NOTICE OF FAULT IN DISHONOR (Opportunity to Cure) constitutes Respondents' agreement to irrevocable conveyance of any and all rights, titles and interests in and on any and all collateral in the association with or the security for the alleged Loan/Account: 0207045469 to the Claimant.

13. Respondents' acceptance and approval of the NOTICE OF FAULT IN DISHONOR (Opportunity to Cure) **constitutes Respondents' agreement to waive any and all rights, immunities and defenses.**

14. Respondents' acceptance, agreement, and approval of the NOTICE OF FAULT IN DISHONOR (Opportunity to Cure) constitutes Respondents' consenting with the filing of encumbrances, including but not limited to liens, writs of possession, writs of execution, and writs of attachment on any and all property, fixtures, accounts, and public hazard bonds by the Claimant(s) against the Respondent(s) up to the amount of **Ten million and 00/100 dollars ($10,000,000.00)** for any and all actions taken by the Respondent(s) **with the hindering, impeding, obstruction and/or delaying of the Claimant(s) rights, titles and interests in any and all collateral in the association with or the security for alleged Loan/Account No. 0207045469.**

15. Respondents' acceptance, agreement, and approval of the NOTICE OF FAULT IN DISHONOR (Opportunity to Cure) constitutes Respondents' consenting with the filing of encumbrances, including but not limited to liens, writs of possession, writs of execution, and writs of attachment, on any and all property, fixtures, accounts, and public hazard bonds by the Claimant(s) against the Respondent(s) up to the amount of **Ten million and 00/100 dollars ($10,000,000.00) for any and all actions taken by the Respondent(s) with the semblance of harassment, coercion, defrauding, and/or defamation of the Claimant(s) and/or the Claimant(s) collateral.**

16. **Respondent has defaulted.**

17. As an operation of law, Respondents by dishonor of the Presentment and the Fault Notice has created a default.

**DEFAULT:**

For the Respondents' failure to honor the Presentment and Fault Notice places the Respondents in **default**. For the course of dealing, set forth herein, with the Respondents failure, refusal, or neglect in the presentment of a verified response to the Presentment and Fault Notice, constitutes the Respondents' failure to perform in good faith and the Respondents' acquiescence and tacit agreement with all terms, conditions and stipulations set forth within this Notice of Default in Dishonor (Consent to Judgment), the Presentment, and the Fault Notice. Therefore this matter is deemed res judicata and stare decisis.

> Respondent shall return Claimant's **ORIGINAL ink signed Promissory Note and forward title to Claimant within ten days (10) of receipt of this NOTICE OF DEFAULT IN DISHONOR (CONSENT TO JUDGMENT) as alleged account 0207045469 has been fully satisfied as of 10/16/2015.**

Of this presentment take due **Notice** and heed, and govern yourself accordingly. This **FINAL EXPRESSION IN A RECORD** is intended as a complete and exclusive statement of the terms of the agreement between the parties.

Alabama Republic )
                          ) sworn and subscribed:        **Commercial Affidavit Oath and Verification**
Jefferson County   )

I, Larry Montgomery Jr, Secured Party Creditor, under my unlimited liability and Commercial Oath, proceeding in good faith, being of sound mind, having first-hand knowledge, affirm, state, and declare that the facts contained herein are true, correct, complete and not misleading, under penalty of International Commercial Law, this Sixteenth day of the Second month, in the year of our Lord, Two-thousand and Sixteen. Witness my hand and seal.

™Larry, Montgomery Jr©, Secured Party Creditor

State of Alabama     )
               ) ss:               **JURAT**
County of Jefferson   )

Subscribed and sworn to (or affirmed) before me on this __16th__ day of ___February___, __2016__, by
**Larry Montgomery Jr** _____, proved to me on the basis of satisfactory evidence to be the person who appeared before me.



Signature
Dacia Jackson, Notary Public

> DACIA JACKSON
> NOTARY PUBLIC
> STATE OF ALABAMA
> COMM. EXP 06-22-2019

Enclosure(s):

(1) **ATTACHMENT "A", RECORD OF PRESENTMENT AND FAULT NOTICE**, consisting of:

    a.   Resolution to the correspondence received regarding account number 0207045469, dated October 28, 2015 (1 page)

    b.   Notice of Fault in Dishonor (Opportunity to Cure), dated November 12, 2015 (3 pages);

    c.   Resolution to the correspondence received regarding account number 0207045469, dated November 20, 2015 (1 page)

    d.   Certificate of Non-Response/Non-Performance, dated January 26, 2016, (received January 29, 2016) (4 pages);

    e.   USPS Forms 3811, Domestic Return Receipt, dated 10/20/2015, 11/16/2015, 1/29/2016 (1 Page)

ATTACHMENT "A"

# RECORD OF PRESENTMENT AND FAULT NOTICE

FOR: NOTICE OF DEFAULT IN DISHONOR, CONSENT TO JUDGMENT # 7015 1520 0001 6427 4665

This section, Attachment "A", includes:

1. Resolution to the correspondence received regarding account number 0207045469, dated October 28, 2015 (1 page)
2. Notice of Fault in Dishonor (Opportunity to Cure), dated November 12, 2015 (3 pages);
3. Resolution to the correspondence received regarding account number 0207045469, dated November 20, 2015 (1 page)
4. Certificate of Non-Response/Non-Performance, dated January 26, 2016, (received January 29, 2016) (4 pages);
5. USPS Forms 3811, Domestic Return Receipt, dated 10/20/2015, 11/16/2015, 1/29/2016 (1 Page)

This section includes a total of Fourteen (14) pages, not inclusive of this page.



Wells Fargo
PO Box 10335
Des Moines, IA 50306-0335

October 28, 2015

Larry Montgomery Jr.
6370 Letson Farm Road
Bessemer, AL 35022

Subject: Resolution to the correspondence received regarding account number 0207045469

Dear Mr. Larry Montgomery Jr.:

We're writing in response to your recent inquiry. We received a similar request from you and sent a response on October 09, 2015.

We're unable to provide any further information because your current request is too broad. If you'd like to provide us with more specific details about what you're seeking, we'll review your request again.

**Going forward**

We value your feedback and appreciate the time and effort you took to contact us. It's been my goal to fully address the concerns you've brought to our attention.

If you have any questions, I'm here to help. You may reach me directly at 1-800-853-8516, extension 46525. I am available to assist you Monday through Friday, 8:00 a.m. to 5:00 p.m. Central Time. If you require immediate assistance and I am unavailable, other representatives are available to assist you at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.

Sincerely,

LaRee Allen
Executive Mortgage Specialist
Customer Care and Recovery Group

Wells Fargo is required by the Fair Debt Collection Practices Act to inform you that, as your loan servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge from bankruptcy, and the loan was not reaffirmed in the bankruptcy case, Wells Fargo will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

EX003/K1V/co1553785/ge4445438/cl70B

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

# NOTICE OF FAULT IN DISHONOR
## (Opportunity to Cure)

Certified Mail #:   7014 2870 0000 1488 8127

Notice date:   November 12, 2015

Claimant(s):   **Larry Montgomery Jr**
**6370 Letson Farms Road**
**Non Domestic**
**BESSEMER [35022]**
**ALABAMA Republic**
**Continental America**

Respondent(s):   **TIMOTHY SLOAN, CFO**
**c/o WELLS FARGO BANK, N.A.**
**420 MONTGOMERY STREET**
**SAN FRANCISCO, CA 94104**

Reference: **LARRY MONTGOMERY JR; LOAN/ACCOUNT# 0207045469**

This instrument is a Notice of Fault in Dishonor upon the instrument(s) tendered by the Claimant(s) on or about October 16, 2015 with the U.S.P.S. Certified Mail Article No. 7014 2870 0000 1488 4426, Return Receipt, and received by the Respondent(s) on or about **October 20, 2015** at the address referenced above.

**PRESENTMENT:** Dated for October 16, 2015, Larry Montgomery Jr, the Claimant(s), presented the following instrument(s) for acceptance:
   1. ACCEPTANCE OF THE ENCLOSED PRESENTMENT FOR VALUE SETTLEMENT AND CLOSURE
   2. A banker's acceptance as a bill of exchange, noted "CERTIFIED PROMISSORY NOTE" by the Claimant(s) with a routing and account number and dated for **October 16, 2015**;

**DISHONOR:** By the terms and conditions of the agreement resulting by the offer and acceptance of that presentment, the Respondent(s) are under the duty and obligation to timely and in good faith protest and/or honor the tender offer by presentment and to provide verification in the form of an adjusted statement of account. A dishonor of the tender offer discharges the alleged liability that the Respondent(s) have claimed. (Uniform Commercial Code § 3-306(b))

Correspondence received by Claimant(s) dated **October 28, 2015** from Respondent(s) stating the Claimant(s) request was too broad while not acknowledging tender presentment nor providing verification in the form of an adjusted statement of account indicates dishonor of above mentioned presentments. Claimant(s) now deems the instrument(s) to have been dishonored on October 28, 2015, and therefore a confession of judgment on the merits is warranted.

**FAULT:** For the failure of the honoring of the offer is placing the Respondent(s) at fault. This presentment is the Claimant(s) good faith offer for an extension of the time to the Respondent(s) for making the required presentment by an additional ten (10) days. Respondent(s) have ten (10) days, for making presentment at the address given above. For the Respondent(s) failure, refusal, or neglect in the presentment of a verified response, as a sufficient verified response is defined below, to this **Notice of Fault in Dishonor** is consenting with the Claimant(s) entry of a Notice of Default in Dishonor upon the Respondent(s), and the issuance of a certificate verifying Respondent(s) non-performance, acceptance of liability, and Respondent(s) acquiescence and tacit agreement with all terms, conditions and stipulations herein by Dacia Jackson, Notary Public.

**RESPONSE:** Only a response that meets the following criteria qualifies as a sufficient verified response:
   1. Any response must be made via a sworn affidavit, verified and/or affirmed by a signature under the penalty of perjury, or by a signature under the full commercial liability, of the affiant(s) thereof; and

   2. Any response must include a verified and/or affirmed adjusted statement of account; and

   3. Any response must include an acknowledgement of acceptance or rejection of the tender offer presented to Respondent(s) dated October 16, 2015, a rejection of tender offer must include detail of fault in instrument(s) and the **ORIGINAL** tender offer instrument(s) must be returned to Claimant(s) immediately; and

   4. Any response must be made as a presentment to the Claimant(s) named above, under the address given above, and received by said Claimant(s) no later than ten (10) days from the postmark of this presentment.

**DEFAULT:** Default is with the Respondent(s) confession of judgment to the following:

1. Claimant(s) tender of the above-referenced instrument(s) are sufficient for the discharge, settlement and setoff of any and all alleged debts, obligations, duties and liabilities of or relating to the above-referenced alleged Loan/Account No. 0207045469 regarding LARRY MONTGOMERY JR.

2. The balance due on the above-referenced alleged Loan/Account No. 0207045469 is Zero and 00/100 dollars ($0.00).

3. The Respondent(s) irrevocable conveyance of any and all rights, titles and interests in and on any and all collateral in the association with or the security for the above-referenced alleged Loan/Account No. 0207045469 to the Claimant(s).

4. The Respondent(s) irrevocable conveyance of the authority for the acquisition, procurement, and/or production of any and all records, documents, and/or communications necessary for the securing of any and all rights, titles and interests in and on any and all collateral in the association with or the security for the above-referenced alleged Loan/Account No. 0207045469 to the Claimant(s).

5. The Respondent(s) waiver of any and all claims, rights, immunities and defenses.

Respondent(s) confession of judgment is with these stipulations:

1. Respondent(s) are granting a specific power-of-attorney for the acquisition, procurement and/or production of any and all records, documents, and/or communications necessary for the securing of any and all rights, titles, and interests in or pertaining to any and all collateral associated with or secured by the above-referenced alleged Loan/Account No. 0207045469 to the Claimant(s).

2. Respondent(s) are consenting with the filing of encumbrances, including but not limited to liens, writs of possession, writs of execution, and writs of attachment on any and all property, fixtures, accounts, and public hazard bonds by the Claimant(s) against the Respondent(s) up to the amount of Ten million and 00/100 dollars ($10,000,000.00) for any and all actions taken by the Respondent(s) with the hindering, impeding, obstruction and/or delaying of the Claimant(s) rights, titles and interests in any and all collateral in the association with or the security for the above-referenced alleged Loan/Account No. 0207045469.

3. Respondent(s) are consenting with the filing of encumbrances, including but not limited to liens, writs of possession, writs of execution, and writs of attachment, on any and all property, fixtures, accounts, and public hazard bonds by the Claimant(s) against the Respondent(s) up to the amount of Ten million and 00/100 dollars ($10,000,000.00) for any and all actions taken by the Respondent(s) with the semblance of harassment, coercion, defrauding, and/or defamation of the Claimant(s) and/or the Claimant(s) collateral.

Of this presentment take due **Notice** and heed, and govern yourself accordingly.

IN WITNESS WHEREOF I hereunto set my hand and seal on this **12th day of November, 2015** and hereby certify all the statments made above are true, correct and complete.

Date: **November 12, 2015**

Claimant: _____

™MONTGOMERY JR. LARRY.,
Sovereign Secured Party Creditor and
Natural Free Man of the Land. ALL
RIGHTS IN TACT, "WITHOUT
PREJUDICE" UCC 1-308.

State of Alabama          )
                          ) SS:                    JURAT
County of Jefferson       )

Subscribed and sworn to (or affirmed) before me on this _12th_ day of _November_, _2015_, by
Larry Montgomery Jr, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature

DACIA JACKSON
NOTARY PUBLIC
STATE OF ALABAMA
COMM. EXP 06-22-2019

NOTICE OF FAULT IN DISHONOR (OPPORTUNITY TO CURE) Page **3** of **3**

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368

Page 1 of 1



November 20, 2015

DCML1CDTNL  002524

ırlırıllılılılıllıtılıllıllıılllıllıılılıllıllı

LARRY MONTGOMERY, JR.
6370 LETSON FARM ROAD
BESSEMER, AL 35022

**Account Information**

| | |
|---|---|
| Telephone: | 1-800-853-8516 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon – Fri, 7 a.m. - 7 p.m., CT |
| Loan number: | 0207045469 |
| Property address: | 6370 Letson Farm Roa |
| | Bessemer AL 35022 |

Subject: Acknowledgment – receipt of inquiry regarding account number 0207045469

Dear Larry Montgomery, Jr.:

Thank you for contacting us. We're writing to let you know that your inquiry has been received and is currently being reviewed.

We expect to complete our research and provide you with the results on or before 12/04/2015. In the event additional time is needed we will contact you.

We value your feedback and appreciate the time and effort you took to bring your inquiry to our attention.

If you have questions during our review process, please call us at 1-800-853-8516. We are available to assist you Monday through Friday, 7:00 a.m. to 7:00 p.m., Central Time.

Sincerely,

*Leesa Whitt-Potter*

Leesa Whitt-Potter
Senior Vice President
Wells Fargo Home Lending

In order to remain compliant with state and federal guidelines, if you have engaged legal counsel for any litigation, including bankruptcy; we will communicate with the appropriate parties going forward.

CC101 / GEM / GEM ID:  GEM04562928 / Compass ID: 1580046 / UUID: GEM04562928-d339f94b-6398-34d3-813d-0bc42ca9762e

## CERTIFICATE OF NON-RESPONSE/NON-PERFORMANCE

STATE OF ALABAMA        )
                        )  ss
COUNTY OF JEFFERSON      )

PRESENTMENT    Be it known, that, the person signing below, a duly empowered Notary Public, at the request

of _Larry Montgomery Jr_____    In care of _6370 Letson Farms Road, Bessemer, AL 35022_____
        Claimant                                                                Address

did duly present on _November 12, 2015_  the attached _NOTICE OF FAULT IN DISHONOR, OPPORTUNITY TO CURE_   dated _November 12, 2015_

to TIMOTHY SLOAN, CFO, c/o WELLS FARGO BANK, N.A. 420 MONTGOMERY STREET, SAN FRANCISCO, CA 94104

_____

_____

_____
                                    Respondent(s)

signed by _Larry Montgomery Jr_____    requesting Respondent(s), the time limit having elapsed for a timely response and/or performance thereto.

DEFAULT    Whereupon, the Notary Public signing below, for the reason **dishonor by non-response/non-performance**, does publicly and solemnly certify the dishonor as against all parties it may concern by reason of non-response/non-performance thereof and stipulations therein.

NOTICE    The undersigned Notary Public, certifies that on _November 12, 2015_    a Notice of Fault in Dishonor (Opportunity to Cure) was sent to the parties noted below by depositing in a depository of the United States Postal Service within the State indicated herein a sealed envelope containing said Notices(s) directed to the respective person(s) or entity(ies) at the last known corresponding address noted below:

| NAME | ADDRESS |
|------|---------|
| TIMOTHY SLOAN | c/o WELLS FARGO BANK, N.A. 420 MONTGOMERY STREET, SAN FRANCISCO, CA 94104 |
| | |
| | |
| | |

TESTIMONY    In testimony of the above, I have signed my name and attached my official seal

_____
Notary Public

My commission expires: _June 22, 2019_

Date _1-26-16_

Dacia Jackson, Notary Public

DACIA JACKSON
NOTARY PUBLIC
STATE OF ALABAMA
COMM. EXP 06-22-2019

# NOTICE OF FAULT IN DISHONOR
## (Opportunity to Cure)

Certified Mail #:   7014 2870 0000 1488 8127

Notice date:   **November 12, 2015**

Claimant(s):   **Larry Montgomery Jr**
**6370 Letson Farms Road**
**Non Domestic**
**BESSEMER [35022]**
**ALABAMA Republic**
**Continental America**

Respondent(s):   **TIMOTHY SLOAN, CFO**
**c/o WELLS FARGO BANK, N.A.**
**420 MONTGOMERY STREET**
**SAN FRANCISCO, CA 94104**

Reference: **LARRY MONTGOMERY JR; LOAN/ACCOUNT# 0207045469**

This instrument is a **Notice of Fault in Dishonor** upon the instrument(s) tendered by the Claimant(s) on or about October 16, 2015 with the U.S.P.S. Certified Mail Article No. 7014 2870 0000 1488 4426, Return Receipt, and received by the Respondent(s) on or about October 20, 2015 at the address referenced above.

**PRESENTMENT:** Dated for October 16, 2015, Larry Montgomery Jr, the Claimant(s), presented the following instrument(s) for acceptance:
   1. ACCEPTANCE OF THE ENCLOSED PRESENTMENT FOR VALUE SETTLEMENT AND CLOSURE
   2. A banker's acceptance as a bill of exchange, noted "CERTIFIED PROMISSORY NOTE" by the Claimant(s) with a routing and account number and dated for October 16, 2015;

**DISHONOR:** By the terms and conditions of the agreement resulting by the offer and acceptance of that presentment, the Respondent(s) are under the duty and obligation to timely and in good faith protest and/or honor the tender offer by presentment and to provide verification in the form of an adjusted statement of account. A dishonor of the tender offer discharges the alleged liability that the Respondent(s) have claimed. (Uniform Commercial Code § 3-306(b))

Correspondence received by Claimant(s) dated October 28, 2015 from Respondent(s) stating the Claimant(s) request was too broad while not acknowledging tender presentment nor providing verification in the form of an adjusted statement of account indicates dishonor of above mentioned presentments. Claimant(s) now deems the instrument(s) to have been dishonored on October 28, 2015, and therefore a confession of judgment on the merits is warranted.

**FAULT:** For the failure of the honoring of the offer is placing the Respondent(s) at fault. This presentment is the Claimant(s) good faith offer for an extension of the time to the Respondent(s) for making the required presentment by an additional ten (10) days. Respondent(s) have ten (10) days, for making presentment at the address given above. For the Respondent(s) failure, refusal, or neglect in the presentment of a verified response, as a sufficient verified response is defined below, to this **Notice of Fault in Dishonor** is consenting with the Claimant(s) entry of a **Notice of Default in Dishonor** upon the Respondent(s), and the issuance of a certificate verifying Respondent(s) non-performance, acceptance of liability, and Respondent(s) acquiescence and tacit agreement with all terms, conditions and stipulations herein by Dacia Jackson, Notary Public.

**RESPONSE:** Only a response that meets the following criteria qualifies as a sufficient verified response:
   1. Any response must be made via a sworn affidavit, verified and/or affirmed by a signature under the penalty of perjury, or by a signature under the full commercial liability, of the affiant(s) thereof; and

   2. Any response must include a verified and/or affirmed adjusted statement of account; and

   3. Any response must include an acknowledgement of acceptance or rejection of the tender offer presented to Respondent(s) dated October 16, 2015, a rejection of tender offer must include detail of fault in instrument(s) and the **ORIGINAL** tender offer instrument(s) must be returned to Claimant(s) immediately; and

   4. Any response must be made as a presentment to the Claimant(s) named above, under the address given above, and received by said Claimant(s) no later than ten (10) days from the postmark of this presentment.

**DEFAULT:** Default is with the Respondent(s) confession of judgment to the following:

    1. Claimant(s) tender of the above-referenced instrument(s) are sufficient for the discharge, settlement and setoff of any and all alleged debts, obligations, duties and liabilities of or relating to the above-referenced alleged Loan/Account No. 0207045469 regarding LARRY MONTGOMERY JR.

    2. The balance due on the above-referenced alleged Loan/Account No. 0207045469 is Zero and 00/100 dollars ($0.00).

    3. The Respondent(s) irrevocable conveyance of any and all rights, titles and interests in and on any and all collateral in the association with or the security for the above-referenced alleged Loan/Account No. 0207045469 to the Claimant(s).

    4. The Respondent(s) irrevocable conveyance of the authority for the acquisition, procurement, and/or production of any and all records, documents, and/or communications necessary for the securing of any and all rights, titles and interests in and on any and all collateral in the association with or the security for the above-referenced alleged Loan/Account No. 0207045469 to the Claimant(s).

    5. The Respondent(s) waiver of any and all claims, rights, immunities and defenses.

Respondent(s) confession of judgment is with these stipulations:

    1. Respondent(s) are granting a specific power-of-attorney for the acquisition, procurement and/or production of any and all records, documents, and/or communications necessary for the securing of any and all rights, titles, and interests in or pertaining to any and all collateral associated with or secured by the above-referenced alleged Loan/Account No. 0207045469 to the Claimant(s).

    2. Respondent(s) are consenting with the filing of encumbrances, including but not limited to liens, writs of possession, writs of execution, and writs of attachment on any and all property, fixtures, accounts, and public hazard bonds by the Claimant(s) against the Respondent(s) up to the amount of Ten million and 00/100 dollars ($10,000,000.00) for any and all actions taken by the Respondent(s) with the hindering, impeding, obstruction and/or delaying of the Claimant(s) rights, titles and interests in any and all collateral in the association with or the security for the above-referenced alleged Loan/Account No. 0207045469.

    3. Respondent(s) are consenting with the filing of encumbrances, including but not limited to liens, writs of possession, writs of execution, and writs of attachment, on any and all property, fixtures, accounts, and public hazard bonds by the Claimant(s) against the Respondent(s) up to the amount of Ten million and 00/100 dollars ($10,000,000.00) for any and all actions taken by the Respondent(s) with the semblance of harassment, coercion, defrauding, and/or defamation of the Claimant(s) and/or the Claimant(s) collateral.

Of this presentment take due Notice and heed, and govern yourself accordingly.

IN WITNESS WHEREOF I hereunto set my hand and seal on this **12th day of November, 2015** and hereby certify all the statements made above are true, correct and complete.

Date: **November 12, 2015**

Claimant: _____

™MONTGOMERY JR. LARRY,
Sovereign Secured Party Creditor and
Natural Free Man of the Land. ALL
RIGHTS IN TACT, "WITHOUT
PREJUDICE" UCC 1-308.

State of Alabama        )
                        ) ss:        JURAT
County of Jefferson     )

Subscribed and sworn to (or affirmed) before me on this _____ day of _____ 2015 by
Larry Montgomery Jr, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

_____
Signature

DACIA JACKSON
NOTARY PUBLIC
STATE OF ALABAMA
COMM. EXP  06-22-2019

NOTICE OF FAULT IN DISHONOR (OPPORTUNITY TO CURE) Page 3 of 3

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Wells Fargo Bank
c/o Timothy Sloan, CFO
420 Montgomery St
San Francisco, CA 94104

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail®   ☐ Priority Mail Express™
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7014 2870 0000 1488 4426

PS Form 3811, July 2013   Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Wells Fargo Bank
c/o Timothy Sloan, CFO
420 Montgomery St
San Francisco, CA 94104

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail®   ☐ Priority Mail Express™
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7014 2870 0000 1488 8127

PS Form 3811, July 2013   Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Wells Fargo Bank
c/o Timothy Sloan, CFO
420 Montgomery St
San Francisco, CA 94104

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail®   ☐ Priority Mail Express™
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7015 0640 0002 8018 0044

PS Form 3811, July 2013   Domestic Return Receipt

This document was prepared by:
Larry Montgomery Jr©
Mail to:
Larry Montgomery Jr
6370 Letson Farms Rd
Bessemer, Alabama [35022]

County Division Code: AL039
Inst. # 2016026138 Pages: 1 of 5
I certify this instrument filed on
3/21/2016 11:52 AM Doc: AFF
Alan L King, Judge of Probate
Jefferson County, AL. Rec: $28.00

Clerk: KWBESS

## RESCISSION OF MORTGAGE

THE STATE OF ALABAMA
COUNTY OF JEFFERSON

**KNOWN ALL MEN BY THESE PRESENTS**, that, WELLS FARGO BANK, NA, ITS SUCCESSORS AND ASSIGNS, hereinafter referred to as the Assignee, has agreed to a rescission of a certain Mortgage made and executed by LARRY MONTGOMERY, JR., A MARRIED MAN and Shameka A. Montgomery, husband and wife, secured by their Real Property, to secure payment of the principle sum of $231,880.00 plus interest, originally to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR RMC FUNDING CORPORATION, ITS SUCCESSORS AND ASSIGNS, in the County of Jefferson (Birmingham Div.), and the State of Alabama, Dated: 12/21/2007 Recorded: 01/11/2008 in Book/Reel/Liber: LR200801 Page/Folio: 13592 as Instrument No.: 20080111000050080, and assigned to WELLS FARGO BANK, NA Recorded: 11/04/2015 as Instrument No.: 201512300108397, by tacit agreement due to fraud perpetrated upon the undersigned, both WELLS FARGO BANK, NA (Assignee) and GINNIE MAE MORTGAGE (Note Holder) have acknowledged, agreed, and have waived any and every claim, lien, mortgage, security agreement, note, and/or encumbrance of any kind against the undersigned and the undersigned's Real Property securing said Mortgage for all time (**SEE ATTACHED**).

The undersigned does hereby release any and all Trustees, assignments, liens, notes, contracts, and/or encumbrances (actual and/or perceived) attached to the undersigned's Real Property and re-conveys all rights, title, and interest in and to said Real Property in **FEE SIMPLE** to the undersigned as lawful **joint owners**, with right of survivorship, their heirs and assigns forever.

**In Witness Whereof**, the undersigned, LARRY MONTGOMERY, JR., A MARRIED MAN and Shameka A. Montgomery, husband and wife, hereinafter **OWNERS**, have caused this conveyance to be executed this 21st day of March, 2016.

BY: _____
Larry Montgomery Jr - OWNER

BY: _____
Shameka A. Montgomery - OWNER

THE STATE OF ALABAMA

COUNTY OF JEFFERSON

I, <u>LINDSAY PEARS</u>, a Notary Public, in and for Jefferson County in the State of Alabama, hereby certify that by LARRY MONTGOMERY, JR., A MARRIED MAN and Shameka A. Montgomery, husband and wife, whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, they have executed the same voluntarily on the day the same bears date.

Given under my hand this the 21st day of March, 2016.

_____
Notary Public

**MY COMMISSION EXPIRES August 10, 2018**

JEFFERSON COUNTY )
)
State of ALABAMA )
) L.S. _____ (SEAL)
)
) L.S. _____ (SEAL)
The united States of America )

Asseveration

COPY

Att: WELLS FARGO BANK, N.A. / JOHN SHREWSBERRY, CFO & GINNIE MAE MORTGAGE / KEITH DONZELL, CFO

The Affiants, Larry Montgomery Jr AND Shameka A. Montgomery, having attained the age of majority, competent to testify, self-realized beings, a free man and free woman upon the land, our yes be yes, our no be no, do hereby solemnly state that the truths and facts stated herein are of first-hand personal knowledge, and true, correct, complete, certain, and not misleading, so help us God.

## AFFIDAVIT OF REVOCATION OF SIGNATURE FOR GOOD CAUSE

### Introductory Certification

The Affiants, Larry Montgomery Jr AND Shameka A. Montgomery, having full first-hand knowledge of the facts stated herein, and making this Affidavit of our own free Will do affirm that the facts stated herein are true, correct, certain, and complete to the best of our knowledge, Affiants further state:

### Plain Statement of Facts

1. THAT, Affiants affixed their signatures to both a Promissory Note and Mortgage on about December 21, 2007, without knowledge that fraud was being perpetrated upon them.
2. THAT, Affiants were actually misled and coerced into signing the aforementioned documents, without knowledge of the fraud that was being perpetrated upon them.
3. THAT, Affiants aware of the facts that fraud vitiates all contracts, agreements and documents, believes the contract with MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR RMC FUNDING CORPORATION is void and nonexistent.
4. THAT, Affiants revoke all signatures for good cause, and "Without Recourse to Me" pursuant to UCC 1-207.
5. THAT, Affiants have, by these Affiants, formally and timely removed the aforementioned signatures for all time and thereby **removes any nexus**, actual or presumed that WELLS FARGO BANK, N.A. / JOHN SHREWSBERRY, CFO and/or GINNIE MAE MORTGAGE / KEITH DONZELL, CFO may believe it has with Affiants by virtue of said signatures and contracts.

### VERIFICATION

Any man or woman having first-hand knowledge of all the facts asserted herein and having absolute power and authority to rebut this affidavit must rebut with the rebutting party's own signature and endorsement notarized, under penalty of perjury and willing to testify, and executed as true, correct, and complete with positive proof attached. Absent positive proof any rebuttal shall be deemed null and

void having no force or effect, thereby waiving any of WELLS FARGO BANK, N.A. / JOHN SHREWSBERRY, CFO AND GINNIE MAE MORTGAGE / KEITH DONZELL, CFO immunities or defenses.

Any rebuttal shall be mailed to the undersigned and the notary within in ten (10) calendar days of WELLS FARGO BANK, N.A. / JOHN SHREWSBERRY, CFO AND GINNIE MAE MORTGAGE / KEITH DONZELL, CFO receipt of this affidavit. When a rebuttal is not received by both the undersigned and the notary within ten (10) days the entire Affidavit and default provisions shall be deemed true and correct.

This Affidavit of Revocation of Signature for Good Cause is dated the Twenty-ninth day of the Second Month of the Year of Our Lord Two-thousand and Sixteen **[February 29, 2016]**.

L.S. _____   **SEAL**
Larry Montgomery Jr; real living man
c/o 6370 Letson Farms Road
Bessemer, Alabama Near [35022]

L.S. _____   **SEAL**
Shameka A. Montgomery; real living woman
c/o 6370 Letson Farms Road
Bessemer, Alabama Near [35022]

## Jurat

State of ALABAMA      )
                    ) ss.
County of JEFFERSON     )

Subscribed and affirmed before me this Twenty-ninth day of the Second month of the Year of Our Lord Two-thousand and Sixteen

Notary Public: _Maseury Rear / Lindsay Rears_

c/o: _1789 Montgomery Hwy_

_Hoover, AL 35244_

My Commission Expires: **MY COMMISSION EXPIRES August 10, 2018**

**WITNESS my hand and official seal.**

_____
Signature of the Notary Public

## CERTIFICATE OF NON-RESPONSE/NON-PERFORMANCE

STATE OF ALABAMA    }
                                   }  ss
COUNTY OF JEFFERSON    }

PRESENTMENT    Be it known, that, the person signing below, a duly empowered Notary Public, at the request

of  Larry Montgomery Jr AND Shameka A. Montgomery    In care of    6370 Letson Farms Road, Bessemer, Alabama [35022]
_____
          Claimant(s)                                                                    Address

did duly present on ____May 7, 2016____ the attached  AFFIDAVIT OF REVOCATION OF SIGNATURE FOR GOOD CAUSE  dated  February 29, 2016

JOHN SHREWSBERRY, CFO c/o WELLS FARGO BANK N.A., 420 MONTGOMERY STREET, SAN FRANCISCO, CA 94104;
to  KEITH DONZELL, CFO c/o GINNIE MAE MORTGAGE c/o 550 12ᵗʰ STREET, SW, THIRD FLOOR, WASHINGTON D.C. 20410
      Respondent(s)

signed by    Larry Montgomery Jr AND Shameka A. Montgomery    requesting  Proof rebutting fraud in both Promissory Note and Mortgage contracts
the time limit having elapsed for a timely response and/or performance thereto.

DEFAULT    Whereupon, the Notary Public signing below, for the reason consent by non-response/non-performance, does publicly and
solemnly certify the agreement between all parties it may concern by reason of non-response/non-performance thereof and **all stipulations
therein**.

NOTICE    The undersigned Notary Public, certifies that on ____February 29, 2016____ Affidavit(s) of Revocation of Signature for Good
Cause were sent to the parties noted below by depositing in a depository of the United States Postal Service within the State indicated herein
sealed envelopes containing said Affidavit(s) directed to the respective person(s) or entity(ies) at the last known corresponding address noted
below:

| NAME | ADDRESS |
|---|---|
| JOHN SHREWSBERRY, CFO | c/o WELLS FARGO BANK N.A., 420 MONTGOMERY STREET, SAN FRANCISCO, CA 94104 |
| KEITH DONZELL, CFO | c/o GINNIE MAE MORTGAGE, 550 12ᵗʰ STREET, SW, THIRD FLOOR, WASHINGTON D.C., 20410 |

TESTIMONY    In testimony of the above, I have signed my name and attached my official seal

_____
Notary Public

My commission expires: ____August 10, 2018____

Date ____March 21, 2016____

Lindsay Pears, Notary Public
1789 Montgomery Hwy
Hoover, AL 35244

---

## CERTIFICATION OF DUE PRESENTMENT OF NOTICE UNDER NOTARY SEAL

**Date of Presentment:**            FEBRUARY 29, 2016

**Notice Presented Under Seal:**    AFFIDAVIT OF REVOCATION OF SIGNATURE FOR GOOD CAUSE

**Notary's Certification:**            The above-noted parties were presented notice under notary seal that Claimant(s) signatures affixed to the
Promissory Note and Mortgage contract, indicated above, were rescinded due to fraud having been
perpetrated upon the Claimant(s) without Claimant(s) knowledge, rendering said contracts null and void from
the beginning AND removing any nexus, actual or presumed by Respondent(s), having no force or effect,
Respondent(s) have waived any and all claims, rights, immunities, and defenses absent of providing positive
proof to rebut the facts presented in the Affidavit of Revocation of Signature for Good Cause with
Respondent(s) own notarized affidavit within ten (10) days from receipt of said affidavit, the time having
elapsed for performance thereof, the entire Affidavit of Revocation of Signature for Good Cause and default
provisions therein has NOW been deemed true, correct, and complete.



**KAREN DUNN BURKS**
**CIRCUIT CLERK**
**BESSEMER DIVISION**
**TENTH JUDICIAL CIRCUIT**
JEFFERSON COUNTY, ALABAMA

P.O. Box 1310
Bessemer, Alabama 35021

(205) 497-8510

1851 2nd Avenue North
Suite 130
Bessemer, Alabama 35020

<u>Verification of Notary Public</u>

    I, Karen Dunn Burks, Circuit Clerk of the Bessemer Division of Jefferson County, Alabama, hereby certify that <u>LINDSAY PEARS</u> whose name is signed to the foregoing certificate and whose commission expires <u>AUGUST 10, 2018</u> was at the time of making same a Notary Public in and for said County, duly commissioned and qualified, and was, under the laws of Alabama, duly authorized to make said certificate, and that as such officer his/her acts and doings are entitled to full faith and credit, and I believe his/her signature to be genuine.

    Given under my hand and seal of office at Bessemer, Alabama this the <u>21st</u> day of <u>March, 2016</u>.

Karen Dunn Burks, Circuit Clerk



Wells Fargo
P.O. Box 10335
Des Moines, IA 50306-0335

April 11, 2016

Larry Montgomery, Jr.
6370 Letson Farm Road
Bessemer, AL 35022

Subject: Resolution to the correspondence received about account number 0207045469

Dear Mr. Larry Montgomery, Jr.:

Addressing your concerns is important to us and I thank you for the opportunity to assist you. I'm responding on behalf of Wells Fargo Home Mortgage to the request received in our office on March 29, 2016.

## Validating the debt

We're writing in response to your recent inquiry. We received a similar request from you and sent a response on October 09, 2015, October 28, 2015, December 02, 2015, and February 15, 2016.

We're unable to provide any further information because your current request is **too broad**. If you'd like to provide us with more specific details about what you're seeking, we'll review your request again.

## Going forward

We value your feedback and appreciate the time and effort you took to contact us. It's been my goal to fully address the concerns you've brought to our attention.

If you have any questions, I'm here to help. You may reach me directly at 1-800-853-8516, extension 1335621019. I am available to assist you Monday through Friday, 8:00 a.m. to 5:00 p.m. Central Time. If you require immediate assistance and I am unavailable, other representatives are available to assist you at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.

Sincerely,

LaRee Allen
Executive Resolution Specialist
Customer Care and Recovery Group

Wells Fargo is required by the Fair Debt Collection Practices Act to inform you that, as your loan servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose. However, if you have received a discharge from bankruptcy, and the loan was not reaffirmed in the bankruptcy case, Wells Fargo will only exercise its rights against the property and is not attempting any act to collect the discharged debt from you personally.

With respect to those loans located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

EX003/K1V/co1720538/ge5176443/cl708

JOHN SHREWSBERRY, CFO
WELLS FARGO BANK, NA
420 MONTGOMERY STREET
SAN FRANCISCO, CA  94104

Larry Montgomery Jr
6370 Letson Farms Road
Bessemer, Alabama [35022]

RE:   ACCOUNT # XXXXXX5469

CM:   7014 2870 0000 1489 2285

Greetings:                                        Date: 1/11/2017

Thank you for your letter dated 12/19/16 claiming the alleged debtor LARRY MONTGOMERY JR owes WELLS FARGO BANK, NA. $239,996.51 the free man on the land commonly addressed by the name Larry Montgomery Jr hereinafter "Principal" intends not to dishonor any presentment and therefore conditionally accepts your presentment for the value despite the issuer not bearing their own unlimited and unrestricted liability or any form of commercial liability attesting to have first hand personal knowledge or the claim being true, correct, complete, certain and not misleading, but herein accepted as being your true and complete offer to the alleged debtor.

Principal on behalf of the alleged debtor, wishes to meet all lawful obligations to WELLS FARGO BANK, NA and requires further and better particulars in order to determine what those obligations maybe, if any. Please furnish Principal within thirty days of the date of this notice, the following: and show:

1. Proof of the existence of an account or contract in the actual flesh and blood name of Larry Montgomery Jr, duly signed and witnessed by both parties (not a unilateral agreement) and upon which signed page there is reference to the entire agreement. (Note: LARRY MONTGOMERY JR is an artificial entity, a limited liability legal fiction trademark which constitutes valuable intellectual property.  All rights, title and interest are reserved).

**2. Proof of claim that you are the current holder in due course of the above mentioned original unaltered debt instrument (not a copy) and that it has not been on-sold to another party.**

3. A copy of the ACTUAL ACCOUNTING whereby WELLS FARGO BANK, NA proves equal consideration and has incurred a loss of the alleged debt.

4. An INVOICE (not a statement) for any amount of money allegedly owed to WELLS FARGO BANK, NA by Larry Montgomery Jr.

5. Proof that there is any lawful money in circulation backed by anything of value with which to pay, alone with the agreed specification of the unity of measure.

6. Under the Truth in Lending Act, I have a right to know who the true party of interest in this alleged transaction is. Please stipulate whether you are the holder in due course for LARRY MONTGOMERY JR'S promissory note. If you are not the holder, then you admit to being the servicer of this obligation. I demand that you disclose who the holder in due course is.

7. Please also stipulate for the record whether or not this alleged loan has been securitized, and if so, what is the name of the REMIC/Trust this loan is bundled with

8. Please stipulate for the record the CUSIP number on the Promissory note.

Should you or nominee (jointly and severally with WELLS FARGO BANK, NA) fail to provide particulars via affidavit on a point for point basis against the points raised by the Principal yet proceed with your attempts to recover monies from alleged debtor or Principal without their expressed permission, including but not limited to, any future solicitation via mail or telephonically, it shall be deemed by all parties that you consent to paying LARRY MONTGOMERY JR the following sums in lieu of injury:

1. Ten Thousand Dollars ($10,000.00) for each communication made to LARRY MONTGOMERY JR whether telephonically or in writing, which is not in affidavit from signed under your (collectively) own unlimited personal liability, regarding your unsubstantiated claim;

2. Three times the value of any property, the enjoyment and use of which by LARRY MONTGOMERY JR or the primary creditor is impaired as a result of WELLS FARGO BANK, NA actions without having first provided documentation verifying their claim;

3. The equivalent of Five Thousand Dollars ($5,000.00) for each transaction initiated by LARRY MONTGOMERY JR where LARRY MONTGOMERY JR'S commercial ability is impeded due to your or WELLS FARGO BANK, NA adverse credit reporting;

4. WELLS FARGO BANK, NA owes LARRY MONTGOMERY JR the amount equivalent to Two Hundred Thirty Nine Thousand Nine Hundred Ninety Six Dollars and Fifty-One Cents ($239,996.51) of your unsubstantiated claim and triple damages;

5. The equivalent of Ten Thousand Dollars ($10,000.00) for each court appearance LARRY MONTGOMERY JR or the Principal makes in response to WELLS FARGO BANK, NA unsubstantiated claims; and you or nominee and WELLS FARGO BANK, NA also voluntarily agrees to:

6. Prove your claim against the estate of LARRY MONTGOMERY JR if you force the alleged debtor into involuntary bankruptcy.

The matter is finally and totally settled.

This is a private communication to you without prejudice in your individual capacity and is intended to effect an out-of-court settlement of this matter. CONDUCT YOURSELF ACCORDINGLY.  Any mail addressed in any way other than at the head of this notice in the proper English language format will be returned to you without dishonor as undelivered as addressed as will any mail not properly autographed and issuer contact name identified bearing their own commercial liability, and should verification of your claim not be submitted therein, will immediately incur an invoice issued to you for injuries pursuant to the above stipulations.

The Principal trusts this completes the matter.

Yours Sincerely.
By.

Larry Montgomery Jr, Principal.
All rights reserved.

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368



December 19, 2016

| Account Information | |
|---|---|
| Online: | wellsfargo.com |
| Fax: | 1-866-278-1179 |
| Telephone: | 1-866-234-8271 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon - Fri, 6 a.m. - 10 p.m., |
| | Sat, 8 a.m. - 2 p.m., CT |
| Loan number: | 0207045469 |
| Property address: | 6370 Letson Farm Roa |
| | Bessemer AL 35022 |

DCML1CDTVV 009B74



LARRY MONTGOMERY JR
6370 LETSON FARM ROAD
BESSEMER, AL 35022

Subject: Loan file has been referred to our attorney

Dear Larry Montgomery Jr:

Primary number: 0581338

THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY. THIS IS NOT A DEMAND FOR PAYMENT.

The above loan file has been referred to our attorney with instructions to begin foreclosure proceedings.

You are hereby notified that, due to the default under the terms of the mortgage or deed of trust, the entire balance is due and payable.

If you have any questions, please contact our attorney listed below:

Mail:     Shapiro & Ingle Llp
          2151 Highland Ave #150

          Birmingham        AL, 35205

Phone:   (704) 333-8107

In the event you are experiencing an involuntary inability to pay and wish to explore an opportunity to reinstate, or need assistance in selling your property, please contact our offices at 1-800-848-9862 and request to speak to one of our Borrower Counseling Representatives.

If you received a discharge in bankruptcy from personal liability for this mortgage loan, you should be aware that the mortgage or deed of trust remains as a valid lien against the property and will be foreclosed. Please be advised that in the event of foreclosure, you would not be personally liable for any part of the debt, but you will lose your interest in an rights to the property.

Foreclosure Department
Wells Fargo Home Mortgage

XF004 708 0264

**Account Information**
Loan number:      0207045469

Property address: 6370 Letson Farm Roa
Bessemer AL 35022

Where appropriate Wells Fargo Home Mortgage is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N. A. © 2015 Wells Fargo Bank, N. A. All rights reserved. NMLSR ID 399801

XF004 706 0264

## VALIDATION DEMAND

Certified Mail # 7014 2870 0000 1489 2292

**NOTICE TO PRINCIPLE IS NOTICE TO AGENT – NOTICE TO AGENT IS NOTICE TO PRINCIPLE**

Larry Montgomery Jr
6370 Letson Farms Road
Bessemer, Alabama [35022]

January 11, 2017

SHAPIRO AND INGLE LLP
10130 PERIMETER PARKWAY – SUITE 400
CHARLOTTE, NC  28216

RE:      Acct #: XXXXXX5469/16-011722

To Whom It May Concern,

This is in response to a letter received on December 21, 2016, on the above referenced matter and is no way an admission of any debt.  This letter is to inform you that I am requesting verification of this debt or any subsequent debt naming WELLS FARGO BANK, NA/LARRY MONTGOMERY JR; In fact, I am emphatically demanding that you provide full disclosure including the information listed below to satisfy my verification requirements.

- A certified copy of the original contract that WELLS FARGO BANK, NA has with LARRY MONTGOMERY JR
- A certified copy of the contract between WELLS FARGO BANK, NA demonstrating the purchase of the alleged debt including any and all costs related thereto.
- A certified copy of the contract between WELLS FARGO BANK, NA giving SHAPIRO AND INGLE LLP authority to act on the behalf of WELLS FARGO BANK, NA
- Certified copies of all records and a full accounting of the account referenced in your letter as ACCT # XXXXXX5469 including but not limited to all records from WELLS FARGO BANK, NA demonstrating that a valid debt exists.
- A copy of the ACTUAL ACCOUNTING whereby WELLS FARGO BANK, NA proves equal consideration and has incurred a loss of the alleged debt
- An INVOICE (not a statement) for any amount of money allegedly owed to WELLS FARGO BANK, NA by LARRY MONTGOMERY JR
- Certified copies of all business licenses including licenses required by the STATE OF ALABAMA to conduct business in ALABAMA.
- Proof that there is any lawful money in circulation backed by anything of value with which to pay, along with the agreed specification of the unit of measure
- A complete list of all officers of SHAPIRO AND INGLE LLP with complete contact information including, but not limited to, full name, title, direct mailing address, direct phone number(s), fax number(s) and email address. Providing a "link" to a website is not acceptable.
- Proof that the alleged debt has not already been satisfied by any means available including but not limited to, a Tax write-off, an Insurance Claim or selling the purported debt to third party debt collector.
- Prove that SHAPIRO AND INGLE LLP is the creditor of this purported debt.

"This is an attempt to bring an action in court. Anything said or written will be used against you."

## VALIDATION DEMAND

Certified Mail # 7014 2870 0000 1489 2292

**NOTICE TO PRINCIPLE IS NOTICE TO AGENT – NOTICE TO AGENT IS NOTICE TO PRINCIPLE**

- Prove that SHAPIRO AND INGLE LLP is the holder in due course of alleged debt
- Prove SHAPIRO AND INGLE LLP have paid the fee required to contract with LARRY MONTGOMERY JR as stated in the Secured Party's UCC-1 Financing Statement (copy attached)
- This completed DEBT COLLECTOR DISCLOSURE STATEMENT, which, if ignored and which by not completing, prohibits you from further collection or contacting me. You have now been subject to $1000 violation, and per RICO statutes, tenfold that amount which is $10,000.00.

Unless you provide the information listed above within thirty (30) days after receiving this letter, this debt will be deemed invalid and further collection attempts will be considered a criminal activity attempting to extort monies. A criminal complaint may be filed against SHAPIRO AND INGLE LLP with various legal entities including, but not limited to, the Federal Bureau of Investigation (FBI) and the Internal Revenue Service Criminal Investigation Division (IRS CID) to investigate the possibility of criminal activity including, but not limited to, violations of the FAIR DEBT COLLECTIONS ACT.

To further substantiate the claim that SHAPIRO AND INGLE LLP may have, do not hesitate to provide the information requested within the time frame allotted to settle this matter as quickly as possible. You may contact me only when providing the required information listed above; Any other communication attempts will be considered to be further attempts to criminally extort monies and will be reported accordingly. Please note that in the event of any legal action you will be required to provide the original(s) of all documents which include wet ink signature(s) at any hearing(s) commencing from these communications (or lack thereof). **Also note, that selling (or otherwise transferring) this account [debt collection attempt] prior to validation may constitute fraud and may result in a federal criminal complaint under the Racketeer Influenced and Corrupt Organizations Act (RICO) listing SHAPIRO AND INGLE LLP and WELLS FARGO BANK, NA as co-conspirators.**

**Notice to Principal is Notice to Agent – Notice to Agent is Notice to Principal.**

**Silence is acquiescence. Acquiescence is estoppels.**

Sincerely,

**AUTHORIZED AGENT for the legal fiction,
LARRY MONTGOMERY JR**
™MONTGOMERY JR: LARRY©, Sovereign Secured Party
Creditor and Natural Free Man of the Land.
ALL RIGHTS IN TACT, "WITHOUT PREJUDICE" UCC 1-308.

cc:    WELLS FARGO BANK, NA

"This is an attempt to bring an action in court. Anything said or written will be used against you."

# VALIDATION DEMAND
Certified Mail # 7014 2870 0000 1489 2292
## NOTICE TO PRINCIPLE IS NOTICE TO AGENT – NOTICE TO AGENT IS NOTICE TO PRINCIPLE
### CEASE AND DESIST COLLECTION ACTIVITIES
### PRIOR TO VALIDATION OF PURPORTED DEBT

Notice to Principal is Notice to Agent – Notice to Agent is Notice to Principal

Pursuant to the Fair Debt Collection Practices Act. 15 U.S.C., Sec. 1601 et seq, this constitutes timely written notice that the law requires the return of the attached erroneous purported debt which is unsigned and unattested, and which I herein discharge and cancel in its entirety, without dishonor, on the grounds of breach, false representation and fraud. These claims are bonded and under the mandates of Article VII of the Bill of Rights.

15 U.S.C., Sec 1692 (e) states that a "false, deceptive, and misleading representation, in connection with the collection of any debt" includes false representation of the character or legal status of any debt. It further identifies as a deceptive practice any threat to take any action that cannot legally be taken.

The notice you have sent omits information that is required to be disclosed, such vital citations as disclosing the agency's jurisdictional and statutory authority. Said Notice further contains false, deceptive and misleading representation, and allegations intended to intentionally pervert the truth for the purpose of including one, in reliance upon such, to part with property belonging to them and to surrender certain substantive legal and statutory rights. To act upon this Notice would divest one of his/her property and their prerogative rights, resulting in a legal injury and invasion of privacy.

Pursuant to 15 U.S.C., Sec 1692(g)(4) Validation of Debts. If you have evidence to validate your claim that the attached does not constitute fraudulent misrepresentation and the one owes this alleged debt to your entity, this is a demand that within ten (10) days of receipt, you provide such validation and supporting evidence to substantiate your claim. Until the requirements of the Fair Debt Collection Practices Act and California Rosenthal Act have been met and your claim is validated, you have no jurisdiction to continue any collection activities.

This is constructive notice that, absent the validation of your claim within ten (10) days of receipt, you must cease and desist any collection activity and are hereby prohibited from making contact through the mail, by telephone, in person, at my home, or at work. You are further prohibited from contacting my bank, my employer or any third party. Each and every attempt of such contact, in violation of this Act, will constitute harassment, defamation of character and will subject your agency and/or board including any and all agents in his/her/their capacity, who take part in such harassment and defamation to a liability for actual damages, as well as statutory damages up to $10,000.00 for each and every violation plus further liability for legal fees to be paid to any counsel which I retain. Furthermore, absent such validation of your claim, you are prohibited from filing any notice of lien and/or levy and are also barred from reporting any derogatory information to any Credit Reporting Agency regarding this disputed purported debt.

Finally, pursuant to the Fair Debt Collections Act, Title 15 U.S.C., Sec 1692 (g)(8), as it is clear you are merely an "agency" or "board" acting on the behalf of someone else, this is a demand that you provide the name of the original "principal" or "holder in due course" for whom you are attempting to collect this alleged debt.

"This is an attempt to bring an action in court. Anything said or written will be used against you."

## VALIDATION DEMAND

Certified Mail # 7014 2870 0000 1489 2292

**NOTICE TO PRINCIPLE IS NOTICE TO AGENT – NOTICE TO AGENT IS NOTICE TO PRINCIPLE**

This is an attempt to gather pertinent information for a pending legal action and any information obtained will be used for that purpose.

**Silence is acquiescence. Acquiescence is estoppels.**

I hereby attest that, to the best of my knowledge and belief that the above information is true correct and complete.

ALL RIGHTS RESERVED

_____ Date 1/11/17

**AUTHORIZED AGENT for the legal fiction,**
**LARRY MONTGOMERY JR**
™MONTGOMERY JR: LARRY©, Sovereign Secured Party Creditor and
Natural Free Man of the Land.
ALL RIGHTS IN TACT, "WITHOUT PREJUDICE" UCC 1-308.

"This is an attempt to bring an action in court. Anything said or written will be used against you."

VALIDATION DEMAND

Certified Mail # 7014 2870 0000 1489 2292

**NOTICE TO PRINCIPLE IS NOTICE TO AGENT – NOTICE TO AGENT IS NOTICE TO PRINCIPLE**

Larry Montgomery Jr
6370 Letson Farms Road
Bessemer, Alabama [35022]

Invoice #1- SHAPIRO AND INGLE LLP – Acct: 16-011722

January 11, 2017

SHAPIRO AND INGLE LLP

RE:     WELLS FARGO BANK, NA - Account # XXXXXX5469

To Whom It May Concern

Your offer[1] is Accepted for Value[2] referenced letter received on dated December 21, 2016 on the above referenced matter. Please review the following billing for time and expenses that have been incurred and are now due and payable. My time is valuable as I'm sure yours is as well. The hourly rate is set at $500.00 per hour.

- Legal research for purported debt ) 1/2 hour.................................................................$250.00
- Compose response letter ½ hour.......................................................................................$250.00
- FDCPA Violation - $1000.00 (pending)

The total due and payable is calculated to be 1 hour @ $500.00/hr (and Pending Penalty of $1000.00) totaling $500.00 at this time. Please make a check or money order payable to Larry Montgomery Jr and forward to the address indicated above. This bill is due as of February 10, 2017. Untimely payment will result in a late fee of $50.00 or 10% of the total bill due (whichever is greater) each month the payment has not been received. Please make every effort to see that this matter is settled honorably. I trust you understand that any unscrupulous or illegal debt collection activity must be dealt with according to the law (FDCPA). Your immediate attention to this matter is greatly appreciated.  You will not receive any further collection notice from me should I pursue litigation and/or commercial lien.

Composed and verified:

By: _____

**AUTHORIZED AGENT for the legal fiction,
LARRY MONTGOMERY JR**
™MONTGOMERY JR: LARRY©; Sovereign Secured Party
Creditor and Natural Free Man of the Land.
ALL RIGHTS IN TACT, "WITHOUT PREJUDICE" UCC 1-308.

This debt is deemed valid and not e if not disputed with 30 days

---

[1] **OFFER.** To bring to or before. To present for acceptance or rejection. To hold out or proffer. To make a proposal to: To exhibit something that may be taken or received or not. Black's Law Dictionary – Second Edition
[2] **ACCEPTANCE.** The act of a person to whom a thing is offered or tendered by another. Whereby he receives the thing with the intention of retaining it. Such intention being evidenced by a sufficient act. Black's Law Dictionary – Second Edition

     "This is an attempt to bring an action in court. Anything said or written will be used against you."

GERALD M. SHAPIRO
   Admitted in Illinois & Florida only
DAVID S. KREISMAN
   Admitted in Illinois only
GRADY I. INGLE
   Admitted in North Carolina and Tennessee only

HELEN BALL
JONATHAN SMOTHERS
WILLIAM P. HARRIS*

# ◆Shapiro and Ingle LLP

10130 Perimeter Parkway, Suite 400
Charlotte, NC 28216

VOICE (704) 333-8107

FAX (704) 333-8156

http://www.shapiro-ingle.com

NICHOLAS CILLO
MATTHEW WILLIAM PENHALE
ERIN L. ROBERTS*
* Admitted in North Carolina and Alabama only

December 21, 2016

Larry Montgomery, Jr
6370 Letson Farm Rd
Bessemer, AL 35022

RE:     Our File Number:      16-011722
        Property Address:     6370 Letson Farm Rd, Bessemer, AL 35022
        Loan Number:          XXXXXX5469

## NOTICE UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, 15 USC 1692, ET SEQ.

The following information is provided as required by the Federal Fair Debt Collection Practices Act:

1.      As of December 21, 2016 our client has advised that the amount of the debt is $239,996.51.

2.      The name of the creditor to whom the debt is owed is: Wells Fargo Bank, NA.

3.      The Fair Debt Collection Practices Act entitles you to dispute the validity of the debt, or any portion thereof, within thirty (30) days of your receipt of this notice. The law also entitles you to request that we provide you the name of the original creditor if the original creditor is different from the current creditor. If you choose to dispute the debt, or any portion thereof, or if you choose to request the name of the original creditor, you must notify us within thirty (30) days of the date you receive this notice. If you do not dispute the debt within this period, it will be assumed to be valid by this office.

4.      If you notify us in writing within (30) days of the date you receive this notice that you are disputing the debt or any portion thereof, or if you notify us in writing within thirty (30) days of the date you receive this notice that you want to know the name of the original creditor if that creditor is different from current creditor, then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

5.      The Fair Debt Collection Practices Act does not require that we wait until thirty (30) days from the date you receive this notice before proceeding to enforce the lender's legal rights under the Mortgage. In the event we do proceed to foreclose on your Mortgage, within thirty (30) days from the date you receive this notice, you still retain the right to dispute the debt, or any portion thereof and you also retain the right to request the name of the original creditor if the original creditor is different from the current creditor.

6.      If you request, in writing, proof of the debt or any portion thereof or if you request, in writing, the name of the original creditor within thirty (30) days from the date you receive this notice, the Fair Debt Collection Practices Act requires us to suspend our efforts to foreclose on your property, even if we have already initiated a foreclosure proceeding, until we mail you information validating the debt and/or until we provide you with the name of the original creditor.

7.      Please be advised that if you are not personally liable on the debt or your personal liability has been discharged in a bankruptcy proceeding, this Notice is provided solely to foreclose the mortgage remaining on your property and is not an attempt to collect the personal obligation.

8.      Because of interest, late charges, and other fees or costs that will vary from day to day, you should confirm the amount due before attempting to make payment. If you pay only the amount shown above, adjustments may be necessary before your funds are processed. In which event, we will inform you before depositing the check for collection.  For further information, write the undersigned or call **(704) 971-6363**. You may also send an email to **SIFigures@LOGS.com**.

At this time, no attorney with the Firm has personally reviewed the particular circumstances of your account.

Any written request should be addressed to:

**Fair Debt Attorney**
**Shapiro & Ingle, LLP**
**10130 Perimeter Parkway, Suite 400**
**Charlotte, NC 28216**

Sincerely,

Fair Debt Attorney
Shapiro & Ingle, LLP

**PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, YOU ARE ADVISED THAT OUR OFFICE MAY BE DEEMED TO BE A DEBT COLLECTOR.  ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

16-011722

GERALD M. SHAPIRO
Admitted in Illinois & Florida only
DAVID S. KREISMAN
Admitted in Illinois only
GRADY I. INGLE
Admitted in North Carolina and Tennessee only

HELEN BALL
JONATHAN SMOTHERS
WILLIAM P. HARRIS*



Shapiro and Ingle LLP

10130 Perimeter Parkway, Suite 400
Charlotte, NC 28216

VOICE (704) 333-8107

FAX (704) 333-8156

http://www.shapiro-ingle.com

NICHOLAS CILLO
MATTHEW WILLIAM PENHALE
ERIN L. ROBERTS*
* Admitted in North Carolina and Alabama only

December 21, 2016


Larry Montgomery, Jr
6370 Letson Farm Rd
Bessemer, AL 35022

*WF#*
*201045469*

After Recording Return To:

RMC FUNDING CORP

215 KATHERINE DRIVE
FLOWOOD, MS 39232

20080111000350080    1/15
Bk: LR200801 Pg:13592
Jefferson County,Alabama
I certify this instrument filed o
01/11/2008 11.27.09 AM MTG
Judge of Probate- Alan L  King

LOAN NO.:   1207301435

VA CASE NO.: 22-22-6-0581338

ESCROW NO.:

TITLE NO.:

PARCEL NO.:

─── [SPACE ABOVE THIS LINE FOR RECORDING DATA] ───

MIN NO.:   100085300005899661

# MORTGAGE

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in  Sections  3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are  also  provided  in Section 16.

(A) **"Security Instrument"** means this document, which is dated **DECEMBER    21    2007** , together with all Riders to this document.

(B) **"Borrower"** is
LARRY MONTGOMERY, JR., A MARRIED MAN and Shameka A. Montgomery,  husband  and  wife

Borrower is the mortgagor under this Security Instrument.

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is  acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the mortgagee under this Security Instrument.**  MERS is organized and existing under the laws of Delaware. and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) **"Lender"** is
RMC FUNDING CORP

Lender is a A MISSISSIPPI         TION          organized and existing under the laws of          Mississippi         . Lender's address is
                    OOD, MS 39232

Initials *LM SAM*

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        Form 3001  1/01
DOCPREP SERVICES, INC. FORM- MSITUALI-3)01        Page 1 of 14        Amended VA
ORIGINAL

(E) "Note" means the promissory note signed by Borrower and dated   DECEMBER   21   ,  2007  . The Note states that Borrower owes Lender
TWO HUNDRED THIRTY ONE THOUSAND EIGHT HUNDRED EIGHTY AND 00/100——————————   Dollars
(U.S. $   231,880.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   JANUARY   01   ,  2038  .

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☒ Assumption Rider |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | ☐ Inter Vivos Trust Rider |
| ☐ Other(s) [specify]: | | |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

VA CASE NO.: 22-22-6-0581338
LOAN NO.:   1207301435

Initials _M_ _SAM_ ___ ___ ___

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3001  1/01
DocPrep Services, Inc. Form-MMTGAL1-3461          Page 2 of 14          Amended VA
ORIGINAL

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the _____ COUNTY _____
of __JEFFERSON__ _____ [Type of Recording Jurisdiction]
                    [Name of Recording Jurisdiction]
/ LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF /

Lot 607, according to the Amended Map of Letson Farms Phase One, Sixteenth Sector, as recorded in Map Book 42, page 96, in the Probate Office of Jefferson County, Alabama, Bessemer Division.

TWO PAGE PUD RIDER ATTACHED HERETO AND MADE A PART HEREOF
ASSUMPTION RIDER ATTACHED HERETO AND MADE A PART HEREOF

PARCEL NO.:

which currently has the address of ___6370 LETSON FARM ROAD___
                                                                        [Street]
__BESSEMER__ , Alabama ___35022___ ("Property Address"):
            [City/Area]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

VA CASE NO.: 22-22-6-0581338
LOAN NO.: 1207301435                                     Initials (M SAM

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS           Form 3001 1/01
DOCPREP SERVICES, INC. FORM - MMTGAL1-3101          Page 3 of 14                  Amended VA
                                                    ORIGINAL

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U. S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return any payment or partial payments if the payment or partial payment are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance

VA CASE NO.: 22-22-6-0581338
LOAN NO.:   1207301435                                                 Initials _/M/ SAM_ ___ ___ ___

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS                Form 3001  1/01
*Document Services, Inc - FORM - MM1GAL1-3181*                    Page 4 of 14                            Amended VA
                                                                ORIGINAL

with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by,

VA CASE NO.: 22-22-6-0581338
LOAN NO.: 1207301435                                                        Initials _MSAM_ ___ ___ ___

ALABAMA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3001  1/01
DOCPREP SERVICES, INC. FORM - MMFGAL1-0101                    Page 5 of 14                         Amended VA
                                                    ORIGINAL

or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the

VA CASE NO.: 22-22-6-0581338
LOAN NO.:   1207301435                                                                    Initials *M SAm*

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS                    Form 3001  1/01
Doc Prep Services, Inc. Form - MMTGAL1-3101              Page 6 of 14                      Amended VA
                                                        ORIGINAL

work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this

VA CASE NO.: 22-22-6-0581338
LOAN NO.: 1207301435                                     Initials _M SAM_

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3001 1/01
DOCPREP SERVICES, INC. FORM - MMTGAL1-8101          Page 7 of 14                        Amended VA
                                                   ORIGINAL

Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

VA CASE NO.: 22-22-6-0581338
LOAN NO.: 1207301435                                    Initials _M_ _SAM_ ___ ___ ___

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3001 1/01
DocPrep Services Inc. Form - SMTGAL1-3181          Page 8 of 14                    Amended VA
                                                  ORIGINAL

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has-if any-with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given. Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

VA CASE NO.: 22-22-6-0581338
LOAN NO.:   1207301435                                              Initials _____ _____ _____ _____

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS                  Form 3001  1/01
DOCPREP SERVICES, INC. FORM - MMTGAL3-5101                Page 9 of 14                    Amended VA
                                                         ORIGINAL

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

VA CASE NO.: 22-22-6-0581338
LOAN NO.: 1207301435                                          Initials _/M_ _SAM_

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3001  1/01
_DOCPREP SERVICES, INC._ FORM - MM3GAL3-3181                Page 10 of 14          Amended VA
                                                           ORIGINAL

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower:

VA CASE NO.: 22-22-6-0581338
LOAN NO.: 1207301435                          Initials  *LM SAM*  ___ ___ ___

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3001  1/01
*DOCPREP SERVICES, INC.* FORM - MMITGAL1-9101          Page 11 of 14          Amended VA
                                          ORIGINAL

(a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

VA CASE NO.: 22-22-6-0581338
LOAN NO.: 1207301435

Initials _____

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        Form 3001 1/01
Doc Prep Services, Inc  Form - SAM Call-3101        Page 12 of 14        Amended VA
ORIGINAL

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in  JEFFERSON                County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

VA CASE NO.: 22-22-6-0581338
LOAN NO.: 1207301435                                    Initials  _LA_ _SAM_ ___ ___

ALABAMA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT – MERS          Form 3001  1/01
*Docprep Services, Inc.  BIRM · MMTGAL13181*          Page 13 of 14          Amended VA
ORIGINAL

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ _____ (Seal)
                                 LARRY MONTGOMERY JR            -Borrower

_____ _____ (Seal)
                                 Shameka A. Montgomery          -Borrower

_____ _____ (Seal)
                                                                -Borrower

_____ _____ (Seal)
                                                                -Borrower

VA CASE NO.: 22-22-6-0581338

LOAN NO.:   1207301435           _____ (Seal)
                                                                -Borrower

                                 _____ (Seal)
                                                                -Borrower

———————————————— [Space Below This Line For Acknowledgment] ————————————————

STATE OF ALABAMA                                    } SS
COUNTY OF Jefferson

  On this  21st  day of  December, 2007 1   R Timothy Estes  ___
_____, a Notary Public in and for said county and in said state, hereby certify that
LARRY MONTGOMERY JR.  and Shameka A. Montgomery ___  ___ ___

whose name(s)  are  signed to the foregoing conveyance, and who  are  known to me,
acknowledged before me that, being informed of the contents of the conveyance,  they  executed the same
voluntarily and as  their  act on the day the same bears date.

Given under my hand and seal of office this the  21st  day of  December, 2007 ___

My commission expires:  7-11-11 ___

[Notarial Seal]                        _____
                                                          Notary Public

                                 This instrument was prepared by:

                                 RMC FUNDING CORP
                                 215 KATHERINE DRIVE
                                 FLOWOOD, MS 39232

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    Form 3001  1/01
DOCPREP SERVICES, INC. FORM - MMTGAL1-3101          Page 14 of 14                   Amended VA
                                                    ORIGINAL

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this   21ST   day of                ER
2007   , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower")
to secure Borrower's Note to
RMC FUNDING CORP

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
6370 LETSON FARM ROAD
BESSEMER, ALABAMA 35022

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such
parcels and certain common areas and facilities, as described in   COVENANTS, CONDITIONS AND RESTRICTIONS

(the "Declaration"). The Property is a part of a planned unit development known as
MCCALLA

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent
entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the
uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.  PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent
Documents. The "Constituent Documents" are the  (i) Declaration; (ii) articles of incorporation, trust
instrument or any equivalent document which creates the Owners Association and (iii) any by-laws or other
rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and
assessments imposed pursuant to the Constituent Documents.

B.  Property Insurance. So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and
which provides insurance coverage in the amounts (including deductible levels), for the periods, and against
loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not
limited to, earthquakes and floods, for which Lender requires insurance, then:

(i)  Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly
premium installments for property insurance on the Property; and

(ii)  Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is
deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

LOAN NO.:  1207301435                          Initials  [ɑ  SM]

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT             FORM 3150 1/01
DOCPREP SERVICES INC  FORM - MS3150N-3501                         Page 1 of 2
                                              ORIGINAL

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C.  Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D.  Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E.  Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i)  the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii)  any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii)  termination of professional management and assumption of self-management of the Owners Association; or

(iv)  any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F.  Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
LARRY MONTGOMERY JR.                    -Borrower      Shameka A. Montgomery                 -Borrower

_____ (Seal)          _____ (Seal)
                                        -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                        -Borrower                                          -Borrower

LOAN NO.:  1207301435

MULTISTATE PUD RIDER - Single Family - Fannie Mac/Freddie Mac UNIFORM INSTRUMENT          **FORM 3150 1/01**
*DOCPREP SERVICES, INC.*  FORM - MS3150N-3501                    Page 2 of 2
                                                        ORIGINAL

## VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this  21ST     day of   DECEMBER     ,  2007      , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to
RMC FUNDING CORP

(herein "Lender") and covering the Property described in the Security Instrument and located at
6370 LETSON FARM ROAD; BESSEMER, ALABAMA 35022
[Property Address]

VA GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

LOAN NO.:  1207301435
CASE #   VA CASE NO.: 22-22-6-0581338
**MULTISTATE VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER WITHOUT GUARANTY**
-539R (0405)          10/03
Page 1 of 3
VMP Mortgage Solutions
(800)521-7291
*Docprep Services, Inc.  Form - VMP539R-2470 rkc 1/2007*          ORIGINAL

LATE CHARGE: At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the Property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the Property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to ONE HALF OF ONE PERCENT (   .50  %) of the balance of this loan as of the date of transfer of the Property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

LOAN NO.:   1207301435
CASE #   VA CASE NO.: 22-22-6-0581338
-539R (0405)                                        Page 2 of 3
Docprep Services, Inc.  Form - VMPS39R-2470 (Rev. 3-2005)        ORIGINAL

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan and Assumption Policy Rider.

_____ -Borrower
LARRY MONTGOMERY JR.

_____ -Borrower
Shameka A. Montgomery

_____ -Borrower

_____ -Borrower

_____ -Borrower

_____ -Borrower

_____ -Borrower

_____ -Borrower

LOAN NO.: 1207301435
CASE #   VA CASE NO.: 22-22-6-0581338
-539R (0405)                    Page 3 of 3
*Docprep Services, Inc.* Form - VMP539R-3476 (Rev. 5-2007)    ORIGINAL

20080111030050080    19/19
Bk: LR200801 Pg:13592
Jefferson County,Alabama
01/11/2008 11 27 09 AM MTG
Fee - $49.50

Mortage Tax -$347.85
Total of Fees and Taxes-$397 35
TONHR



Wells Fargo
PO Box 10335
Des Moines, IA 50306-0335

October 09, 2015

Larry Montgomery, Jr.
6370 Letson Farm Rd.
Bessemer, AL 35022

Subject: Resolution to the correspondence received regarding account number 0207045469

Dear Mr. Larry Montgomery, Jr.:

Addressing your concerns is important to us and I thank you for the opportunity to assist you. I'm responding on behalf of Wells Fargo Home Mortgage to the request received in our office on September 25, 2015.

**Current status of the account**

Currently, your account isn't being reviewed for payment assistance options. Your account is due for the September 01, 2015, through October 01, 2015, payments totaling $3,604.05.

The amounts stated above are provided for informational purposes only; this isn't intended to be a reinstatement quote.

**Transaction history**

In response to your request, enclosed is an account history from October 01, 2012, through October 02, 2015.

**Note holder information**

Wells Fargo Bank, N.A. is the servicer of your loan for owner/assignee Ginnie Mae Mortgage Backed Security Pool 00737911CD. A contact address for the owner/assignee is:

> Wells Fargo Home Mortgage
> P.O. Box 10335
> Des Moines, IA 50306

**Loan validation**

This account originated with RMC Funding Corp. We've included copies of the Note and Mortgage for further details. These documents validate the origination of this account.

GERALD M. SHAPIRO
  Admitted in Illinois & Florida only
DAVID S. KREISMAN
  Admitted in Illinois only
GRADY I. INGLE
  Admitted in North Carolina and Tennessee only

HELEN BALL
JONATHAN SMOTHERS
WILLIAM P. HARRIS*



**10130 Perimeter Parkway, Suite 400**
**Charlotte, NC 28216**

VOICE (704) 333-8107

FAX (704) 333-8156

http://www.shapiro-ingle.com

NICHOLAS CILLO
MATTHEW WILLIAM PENHALE
ERIN L. ROBERTS*
* Admitted in North Carolina and Alabama only

January 30, 2017

Larry Montgomery, Jr
6370 Letson Farm Rd
Bessemer, AL 35022

> Re:  *Larry Montgomery Jr. and Shameka A. Montgomery*
> *6370 Letson Farm Rd, Bessemer, AL 35022*
> *Our File No: 16-011722*

Dear Larry Montgomery, Jr:

According to the Fair Debt Collections Practices Act and the Real Estate Settlement Procedures Act, this letter is in response to your recent correspondence dated January 25, 2017. Our office has obtained verification of the debt and obtained the name and address of the original creditor.

Please find enclosed a copy of the original Promissory Note (which serves as verification of the debt), and a copy of the Mortgage recorded in Book BookLR200801, Page Page 13592 (which includes the name and address of the original creditor).

Please be advised that this letter verifies the debt, and the foreclosure will proceed. Should you have any additional questions, please contact our office directly.

Sincerely,

**SHAPIRO & INGLE, L.L.P.**

Jessica LePage
Paralegal

Enclosures

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.



# NOTE

## NOTICE:  THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

DECEMBER   21 , 2007        FLOWOOD                , Mississippi
_____[Date]_____        _____[City]_____        ____[State]____

6370 LETSON FARM ROAD
BESSEMER, ALABAMA 35022
_____[Property Address]_____

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $      231,880.00      (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is RMC FUNDING CORP

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of      6.000     %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3.  PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      1ST   day of each month beginning on    FEBRUARY      01 , 2008  .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on     JANUARY      01 ,  2038 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    215 KATHERINE DRIVE
FLOWOOD, MS 39232
or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $      1,390.24   .

### 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

LOAN NO.:
MIN NO.:                                Initials  *LM*           "ORIGINAL"

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        FORM 3200  1/01
*DOCPREP SERVICES, INC.  FORM - NOTEVAMS-3906*                Page 1 of 4                *Amended VA*
ORIGINAL

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of ____15____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be ____4.000____ % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

LOAN NO.: ▓▓▓▓▓▓▓▓▓

MIN NO.:

Initials _____

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          FORM 3200  1/01
DOCPREP SERVICES, INC.  FORM - NOTEVAMS-3900                    Page 2 of 4                         Amended VA
ORIGINAL

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  ALLONGE TO THIS NOTE**

If an allonge providing for payments adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall supplement the covenants of this Note as if the allonge were a part of this Note.   [Check applicable box]

[ ]   Graduated Payment Schedules "A" and "B"

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Regulations (38 C.F.R. Part 36) issued under the Department of Veteran Affairs ("V.A.") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of the loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

**Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred, this loan may be declared immediately due and payable upon transfer ("assumption") of the property securing such loan to any transferee ("assumer"), unless the acceptability of the assumption and transfer of this loan is established by the Department of Veterans Affairs or its authorized agent pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

**Assumption Indemnity Liability.** If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan, including the obligation of the veteran to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

LOAN NO.:
MIN NO.:

Initials  ___

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ
THE CONTRACT BEFORE YOU SIGN IT.
WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)          _____(Seal)
LARRY MONTGOMERY JR.              -Borrower                                       -Borrower


_____(Seal)          _____(Seal)
                                  -Borrower                                       -Borrower


_____(Seal)          _____(Seal)
                                  -Borrower                                       -Borrower


WITHOUT RECOURSE
PAY TO THE ORDER OF                                        [Sign Original Only]
REALTY MORTGAGE CORPORATION

RMC FUNDING CORP
BY: Marsha Leach
Marsha Leach      Collateral Specialist


WITHOUT RECOURSE PAY TO THE ORDER OF
                          Wells Fargo Bank, NA
REALTY MORTGAGE CORPORATION
BY Marsha Leach
MARSHA LEACH COLLATERAL-SPECIALIST

WITHOUT RECOURSE
PAY TO THE ORDER OF

Wells Fargo Bank, N.A

By Lori K. Venegonia
Lori K. Venegonia
Vice President Loan Documentation


LOAN NO.: ▓▓▓▓▓▓          MIN NO.: ▓▓▓▓▓▓▓▓
MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          FORM 3200  1/01
DOCPREP SERVICES, INC.  FORM - NDTFVAMS-3900                Page 4 of 4                        Amended VA
                                                           ORIGINAL

After Recording Return To:

RMC FUNDING CORP

215 KATHERINE DRIVE
FLOWOOD, MS 39232

LOAN NO.:

VA CASE NO.:

ESCROW NO.:

TITLE NO.:

PARCEL NO.:

MIN NO.:

2008011000050080    1/19
Bk: LR200801 Pg:13592
Jefferson County,Alabama
I certify this instrument filed on
01/11/2008 11:27.09 PM Mtg
Judge of Probate- Alan L King

[SPACE ABOVE THIS LINE FOR RECORDING DATA]

## MORTGAGE

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   DECEMBER   21   ,   2007   , together with all Riders to this document.

(B) "Borrower" is
LARRY MONTGOMERY, JR., A MARRIED MAN and Shameka A. Montgomery, husband and wife

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is
RMC FUNDING CORP

Lender is a A MISSISSIPPI   TION   organized and existing under the laws of   Mississippi   . Lender's address is
OOD, MS 39232

Initials _Lm SAM_

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      Form 3001 1/01
Amended VA
DOCPREP SERVICES, INC. FORM - MMTGAL1-3101      Page 1 of 14
ORIGINAL

**(E) "Note"** means the promissory note signed by Borrower and dated   DECEMBER      21     2007   . The Note states that Borrower owes Lender
TWO HUNDRED THIRTY ONE THOUSAND EIGHT HUNDRED EIGHTY AND 00/100——————————  ———  Dollars
(U.S. $      231,880.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   JANUARY       01     2038   .

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider             ☒ Planned Unit Development Rider ☒ Assumption Rider
☐ 1-4 Family Rider          ☐ Biweekly Payment Rider       ☐ Inter Vivos Trust Rider
☐ Other(s) [specify]:

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

VA CASE NO.
LOAN NO.:  ███████                            Initials  _LM_ _SAM_ ____ ____ ____

ALABAMA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS            Form 3001  1/01
DAK PREP SERVICES, INC.  FORM - MMTGAL4-3101              Page 2 of 14                    Amended VA
                                                        ORIGINAL.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the _____ COUNTY _____

of JEFFERSON _____ : _____ [Type of Recording Jurisdiction]

[Name of Recording Jurisdiction]

/ LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF /

Lot 607, according to the Amended Map of Letson Farms Phase One, Sixteenth Sector, as recorded in Map Book 42, page 96, in the Probate Office of Jefferson County, Alabama, Bessemer Division.

TWO PAGE PUD RIDER ATTACHED HERETO AND MADE A PART HEREOF
ASSUMPTION RIDER ATTACHED HERETO AND MADE A PART HEREOF

PARCEL NO.:

which currently has the address of   6370 LETSON FARM ROAD _____ :

                                                                      [Street]

BESSEMER _____ , Alabama   35022 _____ ("Property Address"):

          [City/Area]                                            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with the law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

VA CASE NO:
LOAN NO.: ▮▮▮▮▮▮▮▮                                      Initials M SAM

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3001  1/01
DOCPREP SERVICES, INC. FORM - MMTGAL1-3101                Page 3 of 14                          Amended VA
                                                                        ORIGINAL

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U. S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payments if the payment or partial payment are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance

VA CASE NO ▉▉▉▉▉
LOAN NO.: ▉▉▉▉▉                                      Initials _M̸ SAM_ ___ ___ ___

ALABAMA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT - MERS**                **Form 3001  1/01**
*DOCPREP SERVICES, INC.  FORM - MM1GAL1-3101*                    Page 4 of 14                                                    Amended VA
                                                      **ORIGINAL**

with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by,

VA CASE NO:
LOAN NO.:

Initials _M SAM_ ___ ___ ___

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
*DOCPREP SERVICES, INC. FORM - MMTGAL1-3001*   Page 5 of 14   Form 3001 1/01
ORIGINAL   Amended VA

or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the

VA CASE NO.: ▓▓▓▓▓
LOAN NO.:                                                         Initials: _MSAm_ ___ ___ ___

ALABAMA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT - MERS**          Form 3001 1/01
DOC PREP SERVICES, INC.  FORM - MSITGAL3-3101          Page 6 of 14                                          Amended VA
ORIGINAL

work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this

VA CASE NO.:

LOAN NO.:                                                           Initials _LM SAM_

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3001  1/01
*DOCPREP SERVICES, INC.  FORM-SIMITGAL13101*                  Page 7 of 14                        Amended VA
                                                                ORIGINAL

Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

VA CASE NO.
LOAN NO.: ▮▮▮▮▮                                          Initials _M SAM_ __ __ __

ALABAMA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT – MERS          Form 3001  1/01
DOCPREP SERVICES, INC. FORM - MMTGAL1-3101                    Page 8 of 14                          Amended VA
                                                             ORIGINAL

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has-if any-with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

VA CASE NO
LOAN NO.:                                                                    Initials

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Form 3001  1/01
DOCPREP SERVICES, INC. FORM - MMTGAL1-3101          Page 9 of 14          Amended VA
ORIGINAL

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

VA CASE NO:
LOAN NO.: ▬▬▬▬▬                                      Initials _LM_ _SAM_ ____ ____

ALABAMA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT - MERS**                Form 3001 1/01
*DOCPREP SERVICES, INC.  FORM- MM1GAL1-3181*                Page 10 of 14                      Amended VA
                                                                  ORIGINAL

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address, if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower:

VA CASE NO.:
LOAN NO.:

Initials _GM SAM_

ALABAMA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
DOCPREP SERVICES, INC. FORM- MSM (GAL)-3101                Page 11 of 14
ORIGINAL

Form 3001  1/01
Amended VA