FILED
2017 Nov-06 PM 02:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LARRY MONTGOMERY, JR., et al., | } |
| Plaintiffs, | } |
| v. | } Case No.: 2:17-cv-00400-RDP |
| WELLS FARGO BANK, N.A., | } |
| Defendant. | } |

## MEMORANDUM OPINION

This case is before the court on Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss. (Doc. # 20). The Motion to Dismiss has been fully briefed (Docs. # 21, 26, 28-29) and is under submission. After careful review, and for the reasons explained below, Defendant's Motion to Dismiss (Doc. # 20) is due to be granted.

### I. Factual and Procedural History

In December 2007, Plaintiffs Larry Montgomery, Jr., and Shameka Montgomery borrowed $231,880 from RMC Funding Corporation to purchase the property at 6370 Letson Farm Road, Bessemer, Alabama 35022 (hereinafter the "Property"). (Doc. # 18 at 5-11, 22). In a promissory note signed by Plaintiff Larry Montgomery, the borrowers waived their right to issue notices of dishonor to the note holder. (*Id.* at 7). The promissory note indicates that RMC Funding transferred the promissory note to Defendant. (*See id.* at 8).

To secure the note, Plaintiffs granted a mortgage on the Property to RMC Funding. (*Id.* at 9, 11). The mortgage stated that Mortgage Electronic Registration Systems, Inc. ("MERS") was the mortgagee and that MERS held legal title to the security interest conveyed by the

mortgage. (*Id.*). The mortgage granted MERS the right to "foreclose and sell the Property." (*Id.* at 11).

Plaintiffs allege that they sent Defendant a "Negotiable Debt Instrument" on October 16, 2015. (*Id.* at 2). Defendant responded to Plaintiffs' October 2015 correspondence on October 28, 2015. (*Id.* at 41). In its response, Defendant stated that it could not provide any information to Plaintiffs because their request for information was too broad. (*Id.*). In a November 12, 2015 "Notice of Fault in Dishonor," Plaintiffs averred that their October 16, 2015 instrument was a tender offer to which Defendant was required to respond under Uniform Commercial Code § 3-306(b). (*Id.* at 47). They concluded that Defendant had "dishonored" the October 2015 tender offer because it did not send an account statement to them. (*Id.*). Plaintiffs directed Defendant to send them an account statement and "an acknowledgment of acceptance or rejection of the tender offer presented . . . October 16, 2015" within ten days. (*Id.*). On November 20, 2015, Defendant responded that Plaintiffs' account was being reviewed and that it would respond by December 4, 2015. (*Id.* at 45).

Plaintiffs allege that Defendant accepted the terms of the Negotiable Debt Instrument by not complying with the requests for information made in that instrument. (*Id.* at 2, 37) (stating that Defendant's "failure to sufficiently respond or timely honor the Presentment, by the terms of the Presentment, constitutes [Defendant's] acceptance and approval"). Plaintiffs stated in a February 2016 "Notice of Default in Dishonor Consent to Judgment" that the acceptance of their offer discharged all debts, obligations, duties, and liabilities related to the loan and constituted an agreement to convey title of the Property to Plaintiffs. (*Id.* at 37). In February 2016, Plaintiffs purported to revoke their signatures on the loan documents because they were misled and coerced into agreeing to the loan. (*Id.* at 32-33). In March 2016, Plaintiffs signed a "Rescission

of Mortgage", which averred that Defendant had agreed to rescind the mortgage "by tacit agreement due to fraud perpetrated upon [Plaintiffs]." (*Id.* at 31). Plaintiffs filed the "Rescission of Mortgage" with the Jefferson County Probate Court. (*Id.*).

Defendant commenced foreclosure proceedings for the Property in December 2016. (*Id.* at 29). Plaintiffs allege that the foreclosure proceedings were fraudulent because Defendant "was not a party" to the mortgage. (*Id.* at 3). Plaintiffs also allege that Defendant lacks "standing" to foreclose the Property because a mortgage-backed security pool is the actual note holder for the Property. (*Id.*).

In their Amended Complaint, Plaintiffs first claim that Defendant committed fraud by instituting foreclosure proceedings for the Property. (*Id.*). Second, Plaintiffs claim that Defendant breached a contract between the parties. (*Id.*).

## II. Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). Moreover, the court must liberally construe Plaintiffs' Amended Complaint because they submitted the complaint *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Having said that,

"[a] district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

**III.   Analysis**

Defendant seeks to dismiss Plaintiffs' fraud and breach-of-contract claims because neither claim presents a plausible cause of action. (Doc. # 21 at 5-9). The court agrees with Defendant on both counts.

**A.   Plaintiffs' Fraud Claim is Implausible and Does Not Comply with Rule 9(b)**

Plaintiffs contend that Defendant is liable for fraud because it instituted fraudulent foreclosure proceedings. (Doc. # 18 at 3). Plaintiffs insist that Defendant lacked authority to foreclose on the Property under the mortgage because it acted as a loan servicer, not a note holder. (*Id.*). However, Plaintiffs' fraud claim is not plausibly pled and wholly fails to comply with the Federal Rules of Civil Procedure.

The Federal Rules of Civil Procedure require a plaintiff to plead "the circumstances constituting fraud or mistake" with particularity. Fed. R. Civ. P. 9(b). A plaintiff satisfies this requirement if his or her fraud claim presents:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotations omitted).

The Alabama Code defines fraud as "[a]n intentional misrepresentation, deceit, or concealment of a material fact the concealing party had a duty to disclose, which was gross, oppressive, or malicious and committed with the intention on the part of the defendant of thereby depriving a person or entity of property or legal rights or otherwise causing injury." Ala. Code § 6-11-20(b)(1). An Alabama plaintiff must prove the following elements for a claim of

5

fraudulent misrepresentation: (1) "that the defendant made a misrepresentation"; (2) "that that misrepresentation concerned a material existing fact"; (3) "that the plaintiff relied on the misrepresentation"; and (4) "that the reliance was to the plaintiff's detriment." *Lawson v. Harris Culinary Enters., LLC*, 83 So. 3d 483, 492 (Ala. 2011) (quoting *Jewell v. Seaboard Indus., Inc.*, 667 So. 2d 653, 657-58 (Ala. 1995)).

Here, Plaintiffs have not alleged any specific false representation or omission made by Defendant, particularly with regards to the foreclosure. Plaintiffs allege that Defendant lacked standing to initiate foreclosure proceedings because it was not the initial lender. (Doc. # 18 at 3). The documents attached to the Amended Complaint reveal, though, that the mortgage granted MERS the right to initiate foreclosure proceedings. (*Id.* at 11). The court recognizes that the MERS system "operates as follows:"

> When a home is purchased, the lender obtains from the borrower a promissory note and a mortgage instrument naming MERS as the mortgagee (as nominee for the lender and its successors and assigns). In the mortgage, the borrower assigns his right, title, and interest in the property to MERS, and the mortgage instrument is then recorded in the local land records with MERS as the named mortgagee. When the promissory note is sold (and possibly re-sold) in the secondary mortgage market, the MERS database tracks that transfer. As long as the parties involved in the sale are MERS members, MERS remains the mortgagee of record (thereby avoiding recording and other transfer fees that are otherwise associated with the sale) and continues to act as an agent for the new owner of the promissory note.

*In re Mortg. Elec. Registration Sys. (MERS) Litig.*, 659 F. Supp. 2d 1368, 1370 n. 6 (J.P.M.L. 2009). "Through this system, MERS attempts to separate the promissory note evidencing the debt from the mortgage that is collateral or security for the note. According to MERS, the lender takes possession of and holds the note, which may be subsequently assigned multiple times through multiple note holders." *Fuller v. Mortg. Elec. Registration Sys., Inc.*, 888 F. Supp. 2d 1257, 1265-66 (M.D. Fla. 2012) (internal quotations and citations omitted). Thus, Plaintiffs

6

incorrectly suggest that the original lender is the only party who can initiate foreclosure proceedings.

Under Alabama Code § 35-10-12, "any person or entity who, before initiating foreclosure proceedings, becomes a *holder* of a promissory note secured by a mortgage and thereby is entitled to the payment of the mortgage debt may validly foreclose upon a borrower's default." *Sturdivant v. BAC Home Loan Servicing, LP*, 159 So. 3d 47, 55 (Ala. Civ. App. 2013) (emphasis in original). The promissory note attached to Plaintiffs' Amended Complaint indicates that Defendant held the note and, thus, possessed authority to initiate the foreclosure.[1] (Doc. # 18 at 8). Because (1) Plaintiffs' mortgage indicates that MERS received a right to foreclose on the Property in the mortgage and (2) the promissory note indicates that Defendant had a right to foreclose on the Property as the note holder, Plaintiffs' Amended Complaint fails to plausibly allege that Defendant committed any fraudulent misrepresentation or deceit by initiating foreclosure proceedings against the Property.

Additionally, the Amended Complaint does not comply with Rule 9(b). Even accounting for Plaintiffs' *pro se* status, the Amended Complaint does not come close to pleading with particularity (1) the fraudulent representations or omissions made by Defendant, (2) the time, place, and persons responsible for the fraudulent representations or omissions, (3) the content of the fraudulent statements, (4) how they misled Plaintiffs, and (5) what Defendant obtained from the fraud. *See Brooks*, 116 F.3d at 1371. This is an independent and additional reason for dismissing Plaintiffs' fraud claim.

---

[1] Plaintiffs' Amended Complaint alleges that Ginnie Mae Mortgage Backed Security Pool 00737911CD was the note holder at the time of the foreclosure, not Defendant. (Doc. # 18 at 3). This allegation is implausible because the letter referenced in support of that allegation states that the security pool was the "owner/assignee" of the loan, not the note holder. (Doc. # 1-1 at 64).

### B. Plaintiff Presents an Implausible Breach of Contract Claim

Plaintiffs insist that Defendant breached a "private contract" agreed to by the parties. (Doc. # 18 at 3). In their brief, they explain that Defendant agreed to the "Negotiable Debt Instrument" that settled the mortgage in exchange for consideration. (Doc. # 29 at 3). They argue that Defendant thereafter breached the contract by reporting an unpaid debt and initiating foreclosure proceedings. (*Id.* at 4). The court concludes that this claim is meritless.

To establish a breach of contract claim under Alabama law, a plaintiff must prove four elements: (1) a valid contract binding the parties; (2) plaintiff's performance under the contract; (3) defendant's nonperformance; and (4) plaintiff's resulting damages. *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999). A valid contract requires an offer and an acceptance, consideration, and mutual assent to the essential terms for formation. *Ex parte Jackson Cty. Bd. of Educ.*, 4 So. 3d 1099, 1103 (Ala. 2008). Implied contracts can be formed "where there is a bargained-for exchange contemplated by the parties, but no overt expression of agreement." *Id.* at 1104 (quoting *Ellis v. City of Birmingham*, 576 So. 2d 156, 157 (Ala. 1991)).

To the extent that Plaintiffs allege that Defendant breached a proposed loan modification agreement, that claim is barred by the Alabama Statute of Frauds, which provides that an "agreement or commitment to lend money, delay or forbear repayment thereof or to modify the provisions of such an agreement or commitment except for consumer loans with a principal amount financed less than $25,000" must be evidenced by a writing or it is void. Ala. Code. § 8-9-2(7). *See also Coleman v. BAC Servicing*, 104 So. 3d 195, 206-07 (Ala. Civ. App. 2012) (alleged oral misrepresentation that foreclosure would not take place violated the Statute of Frauds); *Mortensen v. MERS*, 2010 WL 5376332, at *6 (S.D. Ala. 2010) (finding that an alleged agreement to modify a mortgage loan must comply with the Statute of Frauds). The written

8

agreement memorializing such a modification must provide the full terms of the agreement, the mutuality of the agreement, and the intention of the parties. *DeVenney v. Hill*, 918 So. 2d 106, 115 (Ala. 2005). And, it must be "subscribed" by the party against whom enforcement of the contract is sought. Ala. Code § 8-9-2. Plaintiffs' assertion that Defendant accepted an "instrument for [the] discharge, setoff, and settlement" of their promissory note by not complying with the terms of the Negotiable Debt Instrument does not plausibly allege that Defendant signed a written agreement memorializing the settlement. (Doc. # 18 at 2). Indeed, Defendant sent a letter to Plaintiff Larry Montgomery on October 28, 2015 that said it could not provide further information to him because his request for information was too broad. (Doc. # 18 at 41). Nothing in that letter indicates that Defendant subscribed any written agreement to the terms of the alleged loan modification. Therefore, Plaintiffs' claim that Defendant breached such an agreement is barred as a matter of law.[2]

In addition, Plaintiffs' own allegations (and the documents attached to the Amended Complaint) make it clear that Defendant did not accept the contract and that the parties never mutually assented to the terms presented by Plaintiffs. Essentially, Plaintiffs attempted to modify their loan contract with Defendant by default based on Defendant's failure to respond to a document in the manner dictated by Plaintiffs. (*See* Doc. # 18 at 47-48). It is implausible to construe this series of events as an acceptance of a contract, especially where Defendant negatively responded to Plaintiffs' October 16, 2015 document. (*Id.* at 41). Nor have Plaintiffs plausibly pled an implied contract (which, again, would be subject to the Statute of Frauds in this case) because the allegations and attached documents reveal no bargained-for exchange contemplated by Defendant. *Cf. Jackson Cnty. Bd. of Educ.*, 4 So. 3d at 1104. Thus, Plaintiffs

---

[2] To the extent Plaintiffs claim that they issued a notice of dishonor to Defendant pursuant to the Uniform Commercial Code, any notice of dishonor was invalid because Plaintiffs waived their right to send a notice of dishonor upon the execution of the promissory note. (Doc. # 18 at 8).

have not adequately pled the formation of a valid loan modification contract that Defendant could have breached by reporting their unpaid debt or initiating foreclosure proceedings.

## III. Conclusion

For the reasons explained above, Defendant's Motion to Dismiss (Doc. # 20) is due to be granted. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this November 6, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE